STATE of Wisconsin, Plaintiff-Respondent,

v.

Julio BERNAL, Jr., Defendant-Appellant.†

Court of Appeals

*No. 81–2071–CR. Submitted on briefs June 16, 1982.—
Decided January 10, 1983.*
(Also reported in 330 N.W.2d 219.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Ruth S. Downs,* assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Stephen W. Kleinmaier,* assistant attorney general.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

GARTZKE, P.J.    Defendant appeals from a judgment of conviction for second-degree murder, sec. 940.02, Stats., and from an order denying his motions for a new trial and to modify the sentence. The issues are whether the trial court erred in refusing to give a requested instruction to the jury and when it imposed the maximum sentence. We hold that the court properly refused to give the instruction and did not abuse its discretion when sentencing defendant. We therefore affirm.

1.    *Jury Instructions*

Defendant was charged with first-degree murder, sec. 940.01, Stats., for the shooting death of Philip Christians. Defendant maintained that the accidental discharge of his gun killed Christians. The trial court instructed the jury on the offenses of first- and second-degree murder. Secs. 940.01 and 940.02. Defendant requested an instruction that unless the jury found he had intentionally discharged the gun, he should be found not guilty. Defendant contends that the trial court erred in refusing to give the instruction. [1]

We limit our review to the evidence relevant to the requested instruction. Defendant and his wife were planning to divorce. October 26, 1979 defendant entered a tavern where Christians was seated at the bar next to

---

[1] The trial court also refused to instruct the jury on manslaughter, sec. 940.05, Stats., based on a claim of imperfect self-defense, because it found defendant's claim that the gun went off accidentally to be inconsistent with a claim of self-defense. This issue is not raised on appeal.

defendant's wife. After conversing briefly with his wife, defendant turned around, loaded a handgun, and fired two shots into her back.[2] He started to back out of the bar, holding the gun. He testified that Christians and the bartender began to move toward him. Defendant said he shot at Christians' legs at a distance of about four to five feet but Christians kept coming. Defendant said that when Christians grabbed the gun at the barrel and twisted it, a second shot was fired. He testified, "I don't mean to shoot him or nothing. It was just when he pulled the gun it made the bullet went out and he just fell down on the floor." The first shot hit Christians' thigh and was not fatal. The second shot hit Christians' neck, causing his death. After the second shot at Christians, defendant shot himself in the chest.

Defendant requested the following instruction:

The defense has asserted that the second shot which struck Phil Christians was accidental.

Unless you are satisfied beyond a reasonable doubt to a moral certainty that Julio A. Bernal intentionally discharged the pistol for a second time at Phillip [sic] Christians, you should find him not guilty.

A defendant is entitled to an instruction on a valid applicable theory of defense if it is timely requested and is supported by credible evidence. *Turner v. State,* 64 Wis. 2d 45, 51, 218 N.W.2d 502, 505 (1974). The state concedes that the record supports defendant's claim that Christians' grabbing the gun may have caused it to fire. The state contends an accidental discharge of the gun would not require defendant's acquittal on the charge of second-degree murder. The state argues that the requested instruction therefore did not accurately state the law on second-degree murder. We agree.

---

[2] Defendant's wife died as a result of her wounds. That shooting was tried in a separate criminal action.

The elements of second-degree murder, sec. 940.02(1), Stats., are (1) that defendant's conduct was imminently dangerous to another; (2) that the conduct was of such character that it evinced a depraved mind, regardless of human life; and (3) that the conduct was causally related to the victim's death. *Wagner v. State*, 76 Wis. 2d 30, 37, 250 N.W.2d 331, 336 (1977). The existence of a particular state of mind is not an element of second-degree murder. 76 Wis. 2d at 48, 250 N.W.2d at 341. The presence or absence of an intention is a state of mind. Accordingly, the intention to perform the act which caused the victim's death is not an element of second-degree murder. The requested instruction therefore had no basis in law and was properly rejected.

Defendant contends that the case law definition of depraved mind requires that he intended to fire the gun. He relies on *State v. Weso*, 60 Wis. 2d 404, 411–12, 210 N.W.2d 442, 446 (1973), where the court said, "A depraved mind has a general intent to do the acts and the consciousness of the nature of the acts and possible result but lacks the specific intent to do the harm."

Except for the result, second-degree murder has the same elements as two lesser crimes. Conduct imminently dangerous to another and evincing a depraved mind, regardless of human life, are elements not only of second-degree murder but also of causing injury by conduct regardless of life, sec. 940.23, Stats., and of endangering safety by conduct regardless of life, sec. 941.30, Stats.[3]

---

[3] Section 940.23, Stats., provides, "Whoever causes great bodily harm to another human being by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life, is guilty of a Class C felony."

Section 941.30, Stats., provides, "Whoever endangers another's safety by conduct imminently dangerous to another and evincing

The case law applying those common elements is applicable to all three crimes. *Balistreri v. State,* 83 Wis. 2d 440, 447, 265 N.W.2d 290, 293 (1978).

The defendant in *State v. Dolan,* 44 Wis. 2d 68, 170 N.W.2d 822 (1969), was charged with endangering safety by conduct imminently dangerous and evincing a depraved mind, sec. 941.30, Stats. He poked the victim's stomach with a butcher knife and later thrust a paring knife against the victim's throat. He argued that a depraved mind is evinced by an intent to injure. The supreme court disagreed and said that sec. 941.30 requires conduct "which is performed with the general intention to do harm without concern whether such harm would result in death; but it is not necessary that there be the specific intent to harm a particular person." 44 Wis. 2d at 72, 170 N.W.2d at 824.

Dealing with endangering safety by conduct regardless of life, sec. 941.30, Stats., the *Weso* court not only made the statement defendant relies on, but said, "It is not necessary that the proof show a depraved mind in fact in the accused; it is sufficient that the conduct of the accused evinces or shows a state of mind which is generally considered by mankind to be a depraved mind." 60 Wis. 2d at 411, 210 N.W.2d at 446. The *Weso* court held that where the defendant cut the victim's face with a knife, the facts evinced a depraved mind, notwithstanding his intention only to frighten the victim.

The *Balistreri* court dealt with endangering safety by conduct regardless of life, sec. 941.30, Stats. The *Balistreri* court explained that "*Dolan* and *Weso* both hold that, if a general intent exists to do acts which are likely to result in death, a specific intent to endanger the safety of the victim is unnecessary." 83 Wis. 2d at 448, 265 N.W.2d at 293. The court also said, "The qualities of

a depraved mind, regardless of human life, is guilty of a Class D felony."

the act as imminently dangerous and evincing a depraved mind, regardless of human life are to be found *in the act itself and the circumstances of its commission.*" 83 Wis. 2d at 454, 265 N.W.2d at 296 (emphasis added, citations omitted).

Intentionally pointing a loaded gun ready to shoot at another person is conduct imminently dangerous to another. Unless it is privileged or otherwise defensible, the act evinces a depraved mind, regardless of human life, whether the person holding the weapon intends to frighten, intimidate or stop the other person and does not intend to shoot. The depravity in this case is reinforced by the fact that defendant not only pointed the gun at Christians but shot at his legs. *Compare State v. Kuta,* 68 Wis. 2d 641, 229 N.W.2d 580 (1975) (pointing loaded gun at stomach of officers, coupled with a threat to kill two months before, evinced a depraved mind).

We hold that the trial court properly rejected the requested instruction.

2. *Sentence*
A. *Discretion Exercised*

Defendant contends that his twenty-year sentence, the maximum for second-degree murder under sec. 939.50 (3) (b), Stats., must be vacated and that he should be resentenced. He claims that the trial court failed to exercise its discretion when imposing the maximum sentence. He asserts that the trial court left the date he should be released from prison to the Parole Board. We disagree with defendant's view of the court's reasoning.

During the sentencing hearing, the court said it had no reason to believe defendant would or would not engage in similar activity. Because no factual information had been provided that defendant will change and not be a threat to society, the court sentenced him to a term of

twenty years, the maximum. The court observed that the Parole Board will have to decide in the future whether a defendant will commit the same type of crime or be a threat to the community. After advising defendant of his appeal rights, the court added that one of its main reasons for imposing the maximum sentence was that the Parole Board would be in a better position to assess the danger of defendant to society. When denying defendant's motion to modify the sentence, the court said that its statement regarding the Parole Board had had no bearing on the sentence.

We reject the argument that the trial court delegated its responsibility to the Parole Board. The court imposed the maximum because it believed that the defendant was dangerous and the court had no information to the contrary. The court's reference to the future role of the Parole Board as being one of the court's "main reasons" for imposing the maximum must be understood in light of the defendant's perceived dangerousness. We hold that the trial court exercised discretion.

### B. *Discretion Not Abused*

Defendant contends that the maximum sentence is excessive under the circumstances. He argues that his actions after shooting his wife are those of a person attempting to avoid trouble. He states he was so distraught and frightened he shot himself after he saw that he had shot Christians. He notes that the prosecutor said that the need for deterrence and rehabilitation played small roles in this situation. He contends that a maximum sentence should be supported by aggravating circumstances which are absent.

We review sentences to determine whether the trial court abused its discretion, and in light of the strong

policy against interference with the court's decision. *Elias v. State,* 93 Wis. 2d 278, 281, 286 N.W.2d 559, 560 (1980). The presumption is that the trial court acted reasonably. 93 Wis. 2d at 281–82, 286 N.W.2d at 560. Here the court heavily weighted the factor of dangerousness when imposing the maximum. The weight to be given the factors is, however, for the trial court to determine. *Cunningham v. State,* 76 Wis. 2d 277, 282, 251 N.W.2d 65, 67–68 (1977). Because the record shows a process of reasoning based on legally relevant factors, the sentence will be upheld. *Bastian v. State,* 54 Wis. 2d 240, 248, 194 N.W.2d 687, 691 (1972). We cannot find that the trial court abused its discretion under the circumstances presented.

*By the Court.*—Judgment of conviction and order denying motions for new trial and to modify sentence are affirmed.