STATE of Wisconsin, Plaintiff-Respondent,

v.

Alvin JENKINS, Defendant-Appellant.†

Court of Appeals

*No. 91–0721–CR. Submitted on briefs November 5, 1991.—Decided March 17, 1992.*

(Also reported in 483 N.W.2d 262.)

†Petition to review denied.

178

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Patricia Flood,* assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *James E. Doyle,* attorney general, and *Paul Lundsten,* assistant attorney general.

Before Moser, P.J., Sullivan and Fine, JJ.

FINE, J. Alvin Jenkins appeals his conviction for first-degree murder, in violation of section 940.01, Stats. (1985-86).[1] He raises two issues. First, he contends that the trial court should not have received into evidence the recitation by a former assistant district attorney of a statement made by the victim's three-year-old son four days after the murder. Second, Jenkins argues that the trial court erred in not instructing the jury on the lesser-included offense of second-degree murder, in violation of section 940.02(1), Stats. (1985-86).[2] We affirm.

---

[1]The victim was killed on December 1, 1986. Section 940.01, Stats. (1985-86), was repealed and recreated by 1987 Wis. Act 399 section 472zkcn, applicable to crimes committed on or after January 1, 1989, 1987 Wis. Act 399 sec. 3204(57)(ag).

[2]Section 940.02, Stats. (1985-86), was repealed and recreated by 1987 Wis. Act 399 section 472zkco, applicable to crimes committed on or after January 1, 1989. 1987 Wis. Act 399 sec. 3204(57)(ag).

Jenkins also asked the trial court to instruct the jury on "heat of passion" manslaughter under section 940.05(1), Stats. (1985-86), but has abandoned any claim of error in that regard by

## I.

Jenkins was charged with killing Carol Greenwade, who was shot in the head by a shotgun at a range of between two and six inches. The only direct evidence linking Jenkins to the murder was what Greenwade's three-year-old son told the Honorable John J. DiMotto, then an assistant district attorney, and Jenkins' alleged confession to an acquaintance, Gerald Clark.

Greenwade's son was seven years old at the time of trial, and was called as a witness by the prosecution. The boy's memory was limited, as revealed by his responses to the prosecutor's questions:

Q Do you remember what happened to your mother?

A Yes.

Q What happened to your mother?

A She died.

Q Do you remember when?

A No.

Q Do you remember anything about that time?

A No.

At the prosecutor's request, the trial court declared the boy to be "unavailable." *See* Rule 908.04(1)(c), Stats. (" 'Unavailability as a witness' includes situations in which the declarant: . . . Testifies to a lack of memory of the subject matter of his statement."). The prosecution then called as a witness Judge DiMotto, who, as an assistant district attorney, had interviewed the boy four days

not raising it on this appeal. *See Reiman Assocs., Inc. v. R/A Advertising, Inc.,* 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292, 294 n.1 (Ct. App. 1981).

after the murder, three and one-half years earlier. The trial court permitted Judge DiMotto to relate that the boy told him that Jenkins and Greenwade first fought and then Jenkins shot her. Judge DiMotto testified as follows:

> I asked him, has anything ever happened between his mother and Uncle Alvin [Jenkins]. And he said that his mama hit Alvin with a telephone and a knife on the leg. And that Alvin hit her on the face and she fell to the floor.
> I then asked him whether or not he had ever seen a gun in the house. And he said, yes, my daddy's gun. And he said that Alvin got the gun. I seen it. I seen Alvin shoot mama. That she fell to the floor.
> . . . I asked him, what did it sound like? He said it sounded hard. He told me, mama said stop and then the gun went off. And he said, bang.

Judge DiMotto testified that the boy also said that his mother had been shot six times and that she walked to the basement after the shooting. Jenkins claims that the trial court improperly admitted hearsay evidence and denied him his constitutional right to confrontation.

Every defendant in a criminal case has a constitutional right to confront his or her accusers. The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Similarly, Article I, section 7, of the Wisconsin Constitution provides: "In all criminal prosecutions the accused shall enjoy the right . . . to meet the witnesses face to face." The rights of a defendant in a criminal case under these two provisions are the same. *State v. Burns,* 112 Wis. 2d 131, 144, 332 N.W.2d 757, 764 (1983). The constitutional issue of confrontation is not reached,

however, unless the out-of-court statement is admissible under a recognized hearsay exception, Rules 908.03 and 908.045, Stats., or a hearsay exclusion, Rule 908.01(4), Stats.[3] *See State v. Martinez,* 150 Wis. 2d 62, 70, 440 N.W.2d 783, 786 (1989). Accordingly, we begin our analysis with the question of hearsay.

### A.

"A trial court's decision to admit or exclude evidence is a discretionary determination that will not be upset on appeal if it has 'a reasonable basis' and was made 'in accordance with accepted legal standards and in accordance with the facts of record,' " *Lievrouw v. Roth,* 157 Wis. 2d 332, 348, 459 N.W.2d 850, 855 (Ct. App. 1990) (citations omitted). If the trial court's decision is supportable by the record, we will not reverse even if the trial court gave the wrong reason, *see Martinez,* 150 Wis. 2d at 72, 440 N.W.2d at 787, or no reason at all, *see Kolpin v. Pioneer Power & Light Co.,* 162 Wis. 2d 1, 30, 469 N.W.2d 595, 607 (1991) ("[W]e will uphold the discretionary decision of the circuit court if we can conclude *ab initio* that there are facts of record which could support the circuit court's decision, had discretion been exercised on the basis of those facts.").

The trial court admitted the out-of-court statements by Greenwade's son pursuant to Rule 908.03(5), Stats., as the boy's recorded past recollection. In asking us to affirm admission of these statements, the State

---

[3]Rules 908.03 and 908.045, Stats., are exceptions to the general rule that hearsay is not admissible. *See* Rule 908.02, Stats. ("Hearsay is not admissible except as provided by these rules . . ..") Those out-of-court statements that fall within Rule 908.01(4), Stats., are, by definition, "*not* hearsay." Rule 908.01(4) (emphasis added).

makes six arguments. First, the State contends that Jenkins waived objection to admission of the statements under Rule 908.03(5). Second, the State argues that, waiver aside, the statements are admissible under Rule 908.03(5). Third, the State argues that the statements are admissible under Rule 908.03(2), Stats. (excited utterance). Fourth, the State contends that the statements are admissible under the residual exception, Rule 908.03(24), Stats. Fifth, the State argues that the statements are admissible under 908.01(4)(a)3, Stats. (prior statement of identification by witness). Finally, the State submits that even if the trial court erred in receiving the statements into evidence, the error was harmless. We discuss these matters in turn.

**1.** *Waiver.* Prior to trial, the defendant filed a motion *in limine* that sought, among other things, an order prohibiting the prosecution "from presenting any evidence concerning a statement made by [the victim's son] to law enforcement and/or prosecution officials shortly after the murder of the victim for the reasons that such statements constitute hearsay and otherwise violate the defendant's constitutional right to confront witnesses against him." A pre-trial hearing was held on the motion, and the trial court ruled that the boy's out-of-court statements would be received under Rule 908.03(5), Stats. The State contends that Jenkins waived his objection to that ruling because at the hearing his trial attorney did not specifically argue lack of admissibility under Rule 908.03(5) but, rather, focussed on his client's constitutional right to confrontation. We disagree.

A party objecting to the admission of evidence need not specify the rule into which the evidence does *not* fit. *See State v. Peters,* 166 Wis. 2d 168, 174, 479 N.W.2d

198, 200 (Ct. App. 1991). Rather, the proponent has the burden to show why the evidence is admissible. *Ibid.* Jenkins' pre-trial motion *in limine* sufficiently alerted the trial court that he was objecting on two grounds: hearsay and his right to confrontation. *Cf.* Rule 901.03(1)(a), Stats. ("Error may not be predicated upon a ruling which admits . . . evidence unless . . . a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context."). There was no waiver. *See State v. Bergeron,* 162 Wis. 2d 521, 528–529, 470 N.W.2d 322, 324–325 (Ct. App. 1991) ("A defendant who has raised a motion *in limine* generally preserves the right to appeal on the issue raised by the motion without also objecting at trial" unless "the issue raised by appeal is different in fact or law from that presented by the motion *in limine.*").

**2.** *Past recollection recorded.* Rule 908.03(5), Stats., permits the receipt of:

> A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made when the matter was fresh in the witness's memory and to reflect that knowledge correctly.[4]

Judge DiMotto testified that notes of his interview of Greenwade's son were made by police officers who were present at the time, and that he reviewed those notes prior to his testimony in order to refresh his recollection. He did not, however, read the notes to the jury.

---

[4]Rule 908.03(5), Stats., was amended into this form by section 202 of 1991 Wis. Act 32, effective July 27, 1991. The amendment made the provision gender-neutral without any substantive change.

A memorandum or record whose contents accurately reflect what a witness once knew but no longer remembers need not have been personally prepared by that witness in order to be admissible under Rule 908.03(5), Stats. *See* Federal Advisory Committee Note to Federal Rule 803(5), *reprinted* at 59 Wis. 2d at R268-269; 4 J. Weinstein & M. Berger, WEINSTEIN'S EVIDENCE ¶ 803(5)[01] at 803-166 to 803-167 (1991); 2 S. Saltzburg & M. Martin, FEDERAL RULES OF EVIDENCE MANUAL 269-270 (5th ed. 1990). In order to be admissible under Rule 908.03(5), however, the recorded recollection must exist in some physical form; testimony by someone to whom the declarant made the statement is not sufficient. 4 J. Weinstein & M. Berger, WEINSTEIN'S EVIDENCE ¶ 803(5)[01] at 803-167 (1991). Judge DiMotto's testimony about what Greenwade's son told him was thus not admissible under Rule 908.03(5).

**3.** *Excited utterance.* Rule 908.03(2), Stats., provides that an out-of-court statement is "not excluded by the hearsay rule" if it relates "to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Although the out-of-court statement need not be made contemporaneously with the event to which it relates, the statement is not admissible under the rule unless the declarant is still under the "stress of excitement caused by the event" at the time the statement is made. *See State v. Moats,* 156 Wis. 2d 74, 96-98, 457 N.W.2d 299, 309-310 (1990). The State did not argue at the hearing that Judge DiMotto's recitation of what Greenwade's son told him was admissible as an excited utterance, and the trial court did not receive Judge DiMotto's testi-

189

mony under that exception.[5] This case is thus different from those authorities cited by the State where trial-court decisions to admit out-of-court statements under Rule 908.03(2) were upheld as within the trial courts' discretion even though the evidence in those cases was sketchy, at best, that the children were under the "stress of excitement" when they made the out-of-court statements. *See Moats,* 156 Wis. 2d at 96–97, 457 N.W.2d at 309–310; *State v. Gollon,* 115 Wis. 2d 592, 598–599, 340 N.W.2d 912, 915 (Ct. App. 1983). Although the point is certainly subject to speculation, there is no *evidence in the record* that Greenwade's son was under the "stress of excitement" caused by his mother's death when he spoke to then assistant district attorney DiMotto, and there is *no finding by the trial court to that effect.* We may not affirm a discretionary determination based on a rationale not advanced by the trial court when there is no evidence in the appellate record to support that rationale. *See In Matter of Guardianship of Eberhardy,* 102 Wis. 2d 539, 571, 307 N.W.2d 881, 895 (1981) (appellate court bound by the record); *cf. Kolpin,* 162 Wis. 2d at 30, 469 N.W.2d at 607 (appellate court will uphold discretionary ruling on a reason not advanced by trial court when "there are facts of record which could support" the appellate court's rationale).

**4.** *Contemporaneous identification.* Although the State's argument that Judge DiMotto's recitation of what Greenwade's son told him was admissible under Rule 908.01(4)(a)3, Stats., is listed after its contention

---

[5]The prosecutor argued at the pre-trial hearing that Judge DiMotto's testimony was alternatively admissible under Rule 908.03(3), Stats. ("existing state of mind, emotion, sensation, or physical condition"). The State does not argue on appeal that Rule 908.03(3) applies.

that Judge DiMotto's testimony was admissible under the residual exception to the rule against hearsay, Rule 908.03(24), Stats., the residual exception should not be considered unless no specific exception or exclusion applies. Accordingly, we analyze whether the boy's statements to Judge DiMotto fall within the "contemporaneous identification" exclusion from the hearsay rule.

Rule 908.01(4)(a)3, Stats., provides that an out-of-court statement is "not hearsay" if it is "[o]ne of identification of a person made soon after perceiving the person." This rule is limited to identification and does not extend to descriptions of the event that underlies the criminal charge. *See, e.g., Swafford v. State,* 533 So. 2d 270, 276 (Fla. 1988) (an observer's description of suspect not an "identification of a person"), *cert. denied,* 489 U.S. 1100. The boy's out-of-court statements to Judge DiMotto were not admissible under Rule 908.01(4)(a)3.

**5.** *The residual exception.* The State argues that Judge DiMotto's testimony about what Greenwade's son told him was admissible under Rule 908.03(24), which provides that an out-of-court statement is "not excluded by the hearsay rule" even though it is "not specifically covered" by the exceptions in Rule 908.03(1) through (23) as long as the statement has "circumstantial guarantees of trustworthiness" that are "comparable" to those exceptions.[6] Like its counterpart, Rule 908.045(6), Stats., Rule 908.03(24) does not contemplate "unfettered

---

[6]Rule 908.03(24), Stats., is the residual exception that applies whether or not the declarant is available. Its counterpart, Rule 908.045(6), Stats., applies when the declarant is not available to testify at the proceeding. Other than that distinction, there is no difference in the application of the two rules. *See State v. Sorenson,* 143 Wis. 2d 226, 242-243, 421 N.W.2d 77, 83 (1988).

judicial discretion" in admitting evidence otherwise excludable by the rule against hearsay but, rather, "was intended to allow admission of evidence under new and unanticipated situations which demonstrate a trustworthiness consistent with that required under other specifically stated exceptions." *State v. Sorenson,* 143 Wis. 2d 226, 243, 421 N.W.2d 77, 83 (1988) (applying Rule 908.045(6) to preliminary-examination testimony).

The State contends that Judge DiMotto's recitation of what Greenwade's son told him four days after the murder has circumstantial guaranties of trustworthiness that are comparable to the past-recollection-recorded exception under Rule 908.03(5), Stats. We agree.

The rule against hearsay recognizes that ascertainment of the truth is best served by having as in-court witnesses those persons who can relate contested events from their own personal knowledge. *Cf.* Rule 906.02, Stats. ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").[7] As the United States Supreme Court has noted:

> Out-of-court statements are traditionally excluded because they lack the conventional indicia of reliability: they are usually not made under oath or other circumstances that impress the speaker with the solemnity of his statements; the declarant's word is not subject to cross-examination; and he is not available in order that his demeanor and credibility may be assessed by the jury.

---

[7]Rule 906.02, Stats., was amended into this form by section 170 of 1991 Wis. Act 32, effective July 27, 1991. The amendment made the provision gender-neutral without any substantive change.

*Chambers v. Mississippi,* 410 U.S. 284, 298 (1973). The various exceptions to the rule against hearsay are designed to accommodate a presumed trustworthiness of certain types of evidence on the one hand against the need for the evidence on the other. *See Dutton v. Evans,* 400 U.S. 74, 93, 95–96 (1970) (Harlan, J., concurring) (analysis of the related concept of a defendant's right to confrontation); *State v. Bauer,* 109 Wis. 2d 204, 212–213, 325 N.W.2d 857, 861–862 (1982) (reaffirming approval of Justice Harlan's concurrence). Thus, for example, Wisconsin recognizes that the residual exception is an appropriate mechanism for the receipt into evidence of out-of-court statements by young sexual assault victims:

> We conclude there is a compelling need for admission of hearsay arising from young sexual assault victims' inability or refusal to verbally express themselves in court when the child and the perpetrator are sole witnesses to the crime. In the absence of a specific hearsay exception governing young children's statements in sexual assault cases, use of the residual exception is an appropriate method to admit these statements if they are otherwise proven sufficiently trustworthy.

*Sorenson,* 143 Wis. 2d at 243, 421 N.W.2d at 83–84. Although Jenkins' appeal here does not involve the issue of whether out-of-court statements of a young sexual-assault victim may be admitted into evidence, *Sorenson's* rationale is equally applicable: "the child and the perpetrator are sole witnesses to the crime," *id.,* 143 Wis. 2d at 243, 421 N.W.2d at 84, who have survived. Accordingly, we must analyze whether Judge DiMotto's recitation of what Greenwade's then three-year-old son told him four days after Greenwade was murdered has "circumstantial guarantees of trustworthiness" that are

193

"comparable" to the memorandum or record required by Rule 908.03(5).

■■■

Prior to its codification as Federal Rule 803(5) and Rule 908.03(5), Stats., the "hearsay exception for recorded recollection [was] generally recognized and [was] described as having 'long been favored by the federal and practically all the state courts that have had occasion to decide the question.' " Federal Advisory Committee Note to Federal Rule 803(5), *reprinted at* 59 Wis. 2d R267 (quoting *United States v. Kelly*, 349 F.2d 720, 770 (2d Cir. 1965), *cert. denied*, 384 U.S. 947). The reason is clear: a past-recollection-recorded document is at least as "trustworthy" as oral testimony, and indeed, "a contemporary, accurate record is inherently superior to a present recollection subject to the fallibility of human memory." 4 J. Weinstein & M. Berger, WEIN-STEIN'S EVIDENCE, ¶ 803(5)[01] at 803–158 (1991).

■■■

There are four prerequisites to the admission of a past-recollection-recorded document under Rule 908.03(5), Stats. First, the witness must once have known about the matter that is recorded in the document. Second, the witness must have insufficient present memory about the event to permit full and accurate testimony. Third, the document must have been made when the matter was fresh in the witness' mind. Finally, the document must accurately reflect what the witness once knew.[8] Although Jenkins contends that some of what Greenwade's son told Judge DiMotto could not

---

[8]The dissent's statement that our listing of the four prerequisites to the admission of a past-recollection-recorded document under Rule 908.03(5), Stats., does "not include the vital 'physical form' initially found to be dispositive when the majority rejected the use of the statement pursuant to sec. 908.03(5)," Dissent at

have happened, that contention goes to weight not admissibility because Jenkins does not argue that there was not sufficient contemporaneity between the murder and Judge DiMotto's interview with Greenwade's son so that the boy's statement did not reflect his knowledge at the time of the murder. Stated another way, the focus of Rule 908.03(5) is whether a witness' contemporaneous knowledge concerning an event was accurately recorded, not whether that knowledge in fact accurately reflects the event. *See United States v. Edwards,* 539 F.2d 689, 692 (9th Cir. 1976), *cert. denied,* 429 U.S. 984 (witness' intoxication at time out-of-court statement was made goes to weight not admissibility where witness testified that he believed statement accurately reflected his recollection at time statement was made).

By admitting Judge DiMotto's testimony under Rule 908.03(5), Stats., the trial court presumptively found that the four prerequisites to admission of a past-recollection-recorded statement under that rule were established. Accordingly, as we have already seen, since there is no requirement that the memorandum be prepared by the person whose past recollection it records, the officers' notes of that interview are within the ambit of Rule 908.03(5), Stats., and would have been admissible under that rule had they been offered into evidence. Therefore, if Judge DiMotto's testimony accurately reflected the contents of those notes, its trustworthiness would be comparable to the notes and would thus fall within Rule 908.03(24), Stats. *Cf.* 4 J. Weinstein & M. Berger, WEINSTEIN'S EVIDENCE ¶ 803(5)[01] at 803-168 (1991) (The memorandum received under Federal Rule 803(5) "is viewed as a substitute for the oral testimony" of the declarant.).

---

205, overlooks that the four prerequisites are to the admission of a *document,* which must—per force—exist in "physical form."

At the time he interviewed Greenwade's son, Judge DiMotto was Director of the Milwaukee County District Attorney's Sensitive Crimes Unit. According to Judge DiMotto's unrebutted testimony, the unit was "responsible for the review and prosecution of all cases such as sexual assaults, child neglect and a number of other cases where children may be victims or witnesses." During his tenure as an assistant district attorney, Judge DiMotto had interviewed "[w]ell in excess of a hundred" children as young as Greenwade's son. Judge DiMotto explained why he did not take notes when he interviewed the boy:

> I feel that if I were sitting there scribbling down or writing down notes that the child might not talk to me. So I did not take any notes down, but the detectives who were in the room, two of them I believe, Detective [Donald] Demokowski and Detective [David] Slowinski, were sitting between Detective [Roosevelt] Harrell and [Greenwade's son], and they took down the notes and they prepared a police report.

Judge DiMotto told the trial court and jury that he had read the report prepared by the officers prior to testifying in order to refresh his recollection, and that once his memory was refreshed, the interview and salient points of the boy's story "stood out in my mind."[9] Judge

---

[9]Judge DiMotto's testimony on this point is as follows:

And [the report] did in fact refresh my recollection specifically because the child was sitting on Detective Harrell's lap. That stood out in my mind. And also the statement about his mother hitting Alvin [Jenkins] with the phone and a knife on the leg, and the mother being hit and the mother being shot. And then the mother—him saying she walked down to the basement. When I read this report, it clearly refreshed my recollection because of those particular circumstances.

196

DiMotto also testified that the boy appeared normal and was "able to talk to me, and he was able to use the language that I have related." Although the officer's notes of Judge DiMotto's interview with the boy were not introduced into evidence, they were available to Jenkins' trial counsel to test the accuracy of Judge DiMotto's testimony. Indeed, Jenkins' trial counsel had attached the notes as an exhibit to his motion *in limine* to prevent the boy's statements to Judge DiMotto from being received into evidence, and could have sought an order requiring the State to introduce the notes into evidence *in lieu* of Judge DiMotto's testimony. The notes, which are included in the appellate record, parallel Judge DiMotto's testimony.[10] Under these circumstances, Judge DiMotto's testimony about what Greenwade's son told him four days after the murder, had

---

[10]The pertinent part of the officers' notes record the following:

> [Greenwade's son] was seated on the knee of Det. Roosevelt Harrell, and he was asked questions by Asst. Dist. Atty. John DiMotto. Asst. Dist. Atty. John DiMotto asked [the boy] if anything happened between his mama and Alvin, at which time [the boy] replied, "Mama hit Alvin with [a] telephone and a knife on the legs, and Alvin hit mama on the face. Mama fell to the floor." John DiMotto also asked [the boy] if he has ever seen a gun in the house in which *[sic]* [the boy] replied, "My daddy's gun, and Alvin got the gun, I seen it. I seen Alvin shoot mama. I was in the living room. [The boy] was asked, "What did it sound like?" He replied, "It sounded hard. Mama said stop, and then the gun went off, bang. Mama hit Alvin with the brown telephone. When she took [illegible] phone, Alvin shot her. After Alvin shot mama, mama got back up and walked to the basement. She went down into the basement." Asst. Dist. Atty. DiMotto asked him, "Did you carry her? [The boy] replied no. He also asked [the boy], "Did Alvin carry her?" He replied no. "Alvin went out the front door. Alvin·put the gun in mama's room and I stayed in the living room."

(Capitalization in original omitted.)

197

"circumstantial guarantees of trustworthiness" that were "comparable" to the officers' notes, and Judge DiMotto's testimony was thus admissible under Rule 908.03(24), Stats. *See* 4 J. Weinstein & M. Berger, WEINSTEIN'S EVIDENCE ¶ 803(5)[01] at 803-167 (1991) (Rule 803(24) might permit testimony by one who recalls what an observer reported about an event.).

## B.

As already noted, the possible admission of an out-of-court statement in a criminal case under an exception to the rule against hearsay does not end our analysis. We must also consider whether admission of Judge DiMotto's testimony about what Greenwade's son told him violated Jenkins' constitutional right to confrontation.

■■■ The crux of the right to confrontation is the " 'opportunity for effective cross-examination.' " *United States v. Owens,* 484 U.S. 554, 559 (1988) (emphasis deleted, citation omitted). There is no right, however, to " 'cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " *Ibid.* (citation omitted). There is an "opportunity for effective cross-examination" for confrontation purposes if the declarant testifies at the trial even though he or she may have no memory concerning the event described by the out-of-court statement. *Id.,* 484 U.S. at 559-564 (statement of prior identification under Federal Rule 801(d)(1)(C)). *Cf. Vogel v. State,* 96 Wis. 2d 372, 386-392, 291 N.W.2d 838, 845-848 (1980) (Admission under Rule 908.01(4)(a)1, Stats., of a prior statement that is inconsistent with the witness' trial testimony does not violate a defendant's right to confrontation

even though the witness claims not to remember giving the statement.). Since Judge DiMotto's testimony had circumstantial guarantees of trustworthiness that were comparable to the officer's notes, we analyze whether Jenkins was deprived of his constitutional right to confrontation in the context of the past-recollection-recorded exception to the rule against hearsay, Rule 908.03(5), Stats.

By definition, the person whose past-recollection recorded statement is admitted into evidence "has insufficient recollection" to permit full and accurate testimony about the event described in the statement. Rule 908.03(5), Stats. Since a witness' inability to "recall either the underlying events that are the subject of an extra-judicial statement or previous testimony or recollect the circumstances under which the statement was given, does not have Sixth Amendment [confrontation] consequence," *California v. Green,* 399 U.S. 149, 188 (1970) (Harlan, J., concurring), *quoted in Owens,* 484 U.S. at 558, admission of a past-recollection-recorded document under Federal Rule 803(5), Stats., does not violate a defendant's constitutional right to confrontation. *See* 4 J. Weinstein & M. Berger, WEINSTEIN'S EVIDENCE ¶ 803(5)[01] at 803–161 to 803–162 & nn.24–25 (1991); *United States v. Riley,* 657 F.2d 1377, 1385–1386 (8th Cir. 1981); *United States v. Marshall,* 532 F.2d 1279, 1285 (9th Cir. 1976), *United States v. Smalls,* 438 F.2d 711, 714 (2d Cir. 1971), *cert. denied,* 403 U.S. 933; *Kelly,* 349 F.2d at 770–771. Thus, although the responses of Greenwade's son to the prosecutor's direct examination indicated that his current memory of his mother's murder was essentially non-existent, the boy did testify; there was accordingly an opportunity for cross-examination, and Jenkins was not deprived of his constitutional

right to confrontation.[11] *Owens,* 484 U.S. at 559–560 (There is no violation of a defendant's right to confrontation "when the witness' past belief is introduced and he is unable to recollect the reason for that past belief.").[12] Additionally, as we have seen, the past-recollection-recorded exception to the hearsay rule is firmly rooted in our jurisprudence, Federal Advisory Committee Note to Federal Rule 803(5), *reprinted at* 59 Wis. 2d R267, and "[w]here proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied." *White v. Illinois,* 112 S. Ct. 736, 738 (1992). Accordingly, the traditional confrontation-issue inquiry of whether the proffered out-of-court statement by a

---

[11]As noted earlier, the trial court declared the boy to be an "unavailable" witness because of the demonstrated lack of memory. As *Owens* points out, however, a witness may be "subject to cross-examination" even though "unavailable" under Federal Rule 804(a)(3), the federal rule equivalent to Rule 908.04(1)(c), because of a memory loss. *Owens,* 484 U.S. at 563–564. As already noted, Jenkins' trial counsel had the officers' notes of what Greenwade's son told Judge DiMotto. Nevertheless, trial counsel did not probe the boy's lack of memory, or attempt to refresh his recollection.

[12]As *Owens* explains:

> The weapons available to impugn the witness' statement when memory loss is asserted will of course not always achieve success, but successful cross-examination is not the constitutional guarantee. They are, however, realistic weapons, as is demonstrated by defense counsel's summation in this very case, which emphasized [the victim]'s memory loss and argued that his identification of [the defendant] was the result of the suggestions of people who visited him in the hospital.

*Owens,* 484 U.S. at 560. Jenkins' trial counsel's closing argument to the jury made much of the alleged infirmities in the statement by Greenwade's son.

non-testifying declarant has the requisite " 'indicia of reliability' " or " 'particularized guarantees of trustworthiness' " need not be made. *Owens,* 484 U.S. at 560 (quoting *Dutton v. Evans,* 400 U.S. 74, 89 (1970) and *Ohio v. Roberts,* 448 U.S. 56, 66 (1980)). Judge DiMotto's testimony relating what Greenwade's son told him four days after the murder was properly admitted.

## II.

 Jenkins also argues that the trial court should have instructed the jury on second-degree murder. First-degree murder in violation of section 940.01, Stats. (1985–86), was a class A felony and required that the defendant have "intent to kill," sec. 940.01(1), Stats. (1985–86), that is, "the mental purpose to take the life of another human being," sec. 940.01(2), Stats. (1985–86). Second-degree murder in violation of section 940.02(1), Stats. (1985–86), on the other hand, was a class B felony and required that the defendant "cause[d] the death of another human being . . . [b]y conduct imminently dangerous to another and evincing a depraved mind, regardless of human life."

> Conduct imminently dangerous to another is conduct "inherently and consciously dangerous to life, not such as casually produces death by misadventure." To meet the requirement of evincing a "depraved mind," the mind must "not only disregard the safety of another but be devoid of regard for the life of another." "The depravity of mind referred to in second degree [depraved mind] murder exists when the conduct causing death demonstrates an utter lack of concern for the life and safety of another and for which conduct there is no justification or excuse."

201

*State v. Davis,* 144 Wis. 2d 852, 863, 425 N.W.2d 411, 416 (1988) (brackets in original, citations omitted). The defendant must have intended to either inflict some harm on the victim, although not the death that resulted, *State v. Blair,* 164 Wis. 2d 64, 73-74, 473 N.W.2d 566, 570-571 (Ct. App. 1991), or put the victim in imminent danger, *State v. Bernal,* 111 Wis. 2d 280, 282-285, 330 N.W.2d 219, 220-222 (Ct. App. 1983).

Second-degree murder in violation of section 940.02(1), Stats. (1985-86), is a lesser-included crime of first-degree murder in violation of section 940.01, Stats. (1985-86). *See* section 939.66(2), Stats. ("An included crime [is] . . . [a] crime which is a less serious type of criminal homicide than the one charged."). Whether the trial court should have submitted second-degree murder to the jury for its consideration is a matter that we must analyze independently of the trial court's determination. *State v. Kramar,* 149 Wis. 2d 767, 791, 440 N.W.2d 317, 327 (1989).

Submission of a lesser-included offense is permitted "*only* when there are reasonable grounds in the evidence both for acquittal on the greater charge and conviction on the lesser offense." *Id.,* 149 Wis. 2d at 792, 440 N.W.2d at 327 (emphasis in original). In making this determination, the evidence must be viewed "in the light most favorable to the defendant." *Ibid.* Additionally, and of special significance here, the trial court must, upon request, submit a lesser-included-offense instruction to the jury "even when the defendant has given exculpatory testimony" if a reasonable view of the evidence, including testimony by the defendant other than the exculpatory portions of that testimony, "supports acquittal on the greater charge and conviction on the lesser charge."

*State v. Wilson,* 149 Wis. 2d 878, 900, 440 N.W.2d 534, 542 (1989).[13] We examine the evidence in this light.

■

Clark testified that he and Jenkins were fishing together shortly after Greenwade's murder when Jenkins remarked, "you know, I killed Carol." According to Clark, Jenkins said he used a sawed-off shotgun. Clark also told the jury that, subsequently, he had seen Jenkins threaten another girl friend by putting "a gun to her head several times telling her he was going to kill her like he killed Carol." Clark responded to questions posed by Jenkins' attorney on cross-examination as follows:

> Q And [Jenkins] also told you that he and Carol had been tussling and the gun went off and shot her in the head?
>
> A Yes.
> . . ..
>
> Q You also testified that or told somebody earlier that [Jenkins] said quote we was wrestling with the gun and the gun slipped up, man, I shot her in the head, is that right?
>
> A Yes.

Although Jenkins' alleged out-of-court statements to Clark elicited by Jenkins' trial counsel were hearsay, the State did not object. Unobjected-to-hearsay is admissible as substantive evidence. *Schlichting v. Schlichting,* 15 Wis. 2d 147, 160, 112 N.W.2d 149, 156 (1961).

---

[13]We agree with the State that permitting a defendant to deny any involvement in a crime but still get the benefit of a lesser-included instruction is inappropriate. We are, however, bound by supreme court precedent. *See State v. Lossman,* 118 Wis. 2d 526, 533, 348 N.W.2d 159, 163 (1984).

 Jenkins testified on his own behalf and denied killing Greenwade. He also denied telling Clark that he shot Greenwade, and denied that he had ever threatened the other woman. We must, however, disregard this testimony in evaluating whether Jenkins was entitled to have the lesser-included offense of second-degree murder submitted to the jury for its consideration. *See Wilson,* 149 Wis. 2d at 900–901, 440 N.W.2d at 542–543.

 If we disregard Jenkins' denial that he killed Greenwade, we are left with Clark's testimony and the out-of-court statements by Greenwade's son. When looked at in a light most favorable to Jenkins, Clark's testimony as to what Jenkins told him about the killing does not support the view that Jenkins lacked intent to kill *and* either intentionally put Greenwade in imminent danger or intended to inflict some harm on Greenwade. Accordingly, Clark's testimony does not support both an acquittal on the first-degree murder charge and a conviction on the lesser charge of second degree, depraved-mind, murder. Similarly, the out-of-court statements by Greenwade's son do not support an acquittal on the first-degree murder charge because no reasonable jury could conclude from the boy's account of how Jenkins first got the gun and then shot Greenwade after she told him to "stop" that Jenkins lacked intent to kill. Jenkins was thus not entitled to have the lesser-included charge of second-degree murder submitted to the jury.

*By the Court.*—Judgment affirmed.

MOSER, P.J. *(dissenting).* The majority permits an interrogator to repeat in court the out-of-court statement of another witness, a statement which the majority admits cannot meet the requirements of sec. 908.03(5).

Initially, the majority states that to be admissible under subsection (5), the recorded recollection of the proffered statement must exist in some physical form. Majority opinion at 189. Subsequently, the majority implies that there are only four prerequisites for admission under subsection (5), all of which are present. Majority opinion at 194–195. I note however, that the "four prerequisites" listed do not include the vital "physical form" initially found to be dispositive when the majority rejected the use of the statement pursuant to sec. 908.03(5).

The majority opinion states that the recitation has "circumstantial guarantees of trustworthiness that are *comparable* to the past-recollection-recorded exception under Rule 908.03(5), Stats.," majority opinion at 192 (emphasis added), paving the way for its admission under the residual exception, sec. 908.03(24), Stats., even though the recitation itself is *not* admissible under Rule 908.03(5). Because this reasoning is circular, I dissent. I disagree that the recitation in question does in fact have the required "comparable guaranties of trustworthiness."

On its face, subsection (5) presents four[1] "circumstantial guaranties of trustworthiness":

1) a memorandum or record,

2) the witness' knowledge of the matter of concern,

3) a showing that the recollection was fresh when the memorandum or record was made, and

4) a showing that the memorandum or record reflects the witness' knowledge correctly.

[1]Subsection (5) has an additional requirement, present recollection insufficient for testimony, which cannot be classified as a guaranty of trustworthiness.

The memorandum or record itself is not just a formality, its existence and physical immutability guarantee that the "fresh recollection" is accurately brought before the fact-finder. The existence of a physical record is thus one of the most important circumstantial guaranties of trustworthiness to be found in subsection (5). Even more importantly, *the showing* that the memorandum or record reflects the witness' knowledge correctly is another, independent and important guarantee of trustworthiness. The majority substitutes the "presumptive" finding of this element by the trial court for an explicit finding, based upon record evidence. Majority opinion at 195. To blithely presume that a trial court, which erroneously admitted testimony clearly lacking one required element of subsection (5), has in fact correctly scrutinized the remaining four elements, sets a dangerous precedent with constitutional overtones for the defendant in this criminal case. I would require that the necessary comparable guarantees be supported by evidence of record and not hold, as the majority does, that the trial court presumptively found the remaining elements of subsection (5). Nothing in the record supports such a presumption. The trial court merely allowed DiMotto's testimony to stand.

Despite DiMotto's sincere and accurate (after reading the written report of the officer) reporting of the words he heard spoken by the boy, DiMotto can only assure the court that the memorandum accurately reflects the words spoken by the boy out of court. DiMotto, as former interrogator, cannot be permitted to assure the jury by his personal demeanor, credibility and current title that that statement reflects the boy's knowledge correctly. Introduction of a statement on the theoretical grounds that its trustworthiness is supported by guarantees comparable to those of sec. 908.03(5)

206

requires that a reasonable substitute for *all* of those guaranties be present, not merely substitutes for *some* of them. Stated another way, I cannot accept that the focus of an exception to the exclusion of hearsay is merely an accurate physical record of an unexamined and therefore possibly inaccurate statement. *See* majority opinion at 195.

In my opinion, the records of the officers recording DiMotto's questioning of the boy might be permitted to augment *the boy's* testimony about events that he can no longer remember, pursuant to sec. 908.03(24). However, these records cannot permit DiMotto to testify about those events. At a minimum, the prosecution should be required to present the boy's additional testimony concerning his current belief that his earlier statements accurately reflected his childish perceptions at the time of the murder. *Cf. United States v. Edwards,* 539 F.2d 689, 692 (9th Cir. 1976), *cert. denied,* 429 U.S. 984.

Finally, it is important to note that the underlying rationale for the introduction of DiMotto's recitation is lacking. This is not a case where we seek to balance a "presumed trustworthiness" against the "need for evidence." Majority opinion at 193. The prosecution was merely faced with a tactical choice: to introduce the written record of the statement (the officers' reports) after making a showing of the five elements required by subsection (5) or to present DiMotto's recitation of that statement.

In essence, the majority opinion in this case would permit members of the prosecution staff to testify to the truth underlying any statement that they had ever heard, provided someone had accurately recorded the statement at the time it was made. Such testimony cannot be allowed, under the aegis of the statutory catch-all of subsection (24) and an easily overlooked substitution

of "presumptive trial court findings" for record evidence. Appellate decisions concerning the rules of evidence are applied in a wide variety of settings, not just difficult criminal cases. The majority opinion would require that in the future any personable witness with a refreshed recollection of accurately recorded statements could be substituted for documentary evidence. The opposing party is thereby forced to confront not the declarant, who by definition lacks memory, and possibly other attributes of reliability such as maturity, sobriety, or sanity, but the proponent's selected witness.