# COURT OF APPEALS
## DECISION
## DATED AND FILED

## April 5, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP309-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF1237

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ROBERT D. RAMCZYK,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: T. CHRISTOPHER DEE and DAVID A. FEISS, Judges. *Affirmed*.

Before Donald, P.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1　PER CURIAM. Robert D. Ramczyk appeals the judgment convicting him upon a jury verdict for one count of first-degree reckless injury with use of a dangerous weapon, contrary to WIS. STAT. § 940.23(1)(a) (2019-20).[1] He also appeals the circuit court order denying his motion for postconviction relief without a hearing. Ramczyk argues his trial counsel was ineffective for failing to discuss the option of requesting a jury instruction for the lesser-included offense of second-degree reckless injury and for failing to request such instruction. We conclude that under the facts of this case that Ramczyk was not entitled to a lesser-included offense instruction for second-degree reckless injury, and therefore, trial counsel was not ineffective. Thus, we affirm.

## BACKGROUND

¶2　This matter arises out of a shooting on March 10, 2018, in the parking lot of the Mitchell Park Domes in Milwaukee after several car loads of people gathered to continue a conflict that began as a fist fight the previous day at a roller skating rink in Cudahy. According to the criminal complaint, Ramczyk, a passenger in the rear seat of a gray Audi A6, opened the rear driver's side door and fired four shots at the Lexus SUV behind it, one shot struck the passenger in the front seat, J.P.,[2] in the face.

¶3　At trial in May 2019, C.B. testified that she is Ramczyk's cousin and she was a passenger in the Audi during the incident. One of C.B.'s friends was

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] In accordance with WIS. STAT. § 809.86, we identify the victims and witnesses in this matter by initials.

2

involved in a fist fight in the parking lot of a roller skating rink on March 9, 2018; Ramczyk was not present. The next day, Ramczyk's sister let C.B. know that the conflict between the two factions had resumed. There were messages exchanged on social media about continuing the fight at the Mitchell Park Domes later that day. C.B. read aloud parts of the Facebook Messenger group text conversation among herself, Ramczyk, his sister, and D.W., the brother of one of the fist fight participants. In one of the messages, Ramczyk attached a picture of a gun with the text, "they don't want none we got big bois round here." Additionally, in the Snapchat messages between the two factions, C.B. stated that the other side was threatening them and saying they were "scared" if they did not come to the fight.

¶4 C.B. further testified that her mother drove them in the gray Audi to the Mitchell Park Domes. C.B. sat in the front passenger seat, and Ramczyk, Ramczyk's friend, and D.W. sat in the backseat, with Ramczyk seated behind the driver. She stated:

> We pulled into the parking lot behind the Domes, and we pulled in front of a car, and then as we were pulling in front of the car, three other trucks came driving behind us as if they were going to smash into our car. So we tried to leave, and then they started chasing after us after we were trying to exit from the parking lot.

C.B. stated, that "after [they] were exiting … there was a shooting." She ducked down and did not see who was shooting, but she heard gunshots and figured out that the shots were coming from within the Audi. C.B. identified the Audi in a still photo of surveillance video footage that showed an arm and gun coming out of the driver's side rear door.

¶5      J.P. testified that she drove her boyfriend,[3] his brother, and his brother's friend to the Mitchell Park Domes parking lot on March 10, 2018.  She was driving the 2004 black Lexus SUV until they arrived, at which point her boyfriend switched to be the driver.  They planned to meet up with her boyfriend's cousin and "three other cars full of people" who arrived after they did and she believed they also knew her boyfriend's cousin.  J.P. reviewed multiple surveillance videos of the Lexus, the Audi, and the other cars, including a Volkswagen Passat, racing around the parking lot.

¶6      J.P. further testified that when a gray Audi arrived, her boyfriend "raced behind them" in the parking lot, which she believed was an attempt to scare the Audi's occupants.  J.P. stated her boyfriend "hit the brakes really hard [in the Lexus] as soon as they hit the brakes [in the Audi], and that's when [she] got shot."  The videos ended with the Audi abruptly stopping and the Lexus braking in reaction, and then the driver's side rear door opened and J.P. was shot.  She heard four shots and the third one hit her in her head.  J.P. was transported by ambulance to the hospital where she had surgery on her mouth during which they removed the bullet that was lodged in her upper right cheek.

¶7      Detective Jason Rydzewski of the Milwaukee Police Department testified that he saw a bullet hole in the passenger side of the front windshield of the Lexus.  He found no firearms or ballistics materials in the Passat or the Lexus.  He found four shell casings in the parking lot, spaced about eight to ten feet apart,

---

[3] J.P. testified that she and her boyfriend broke up after the shooting incident.  For ease of reading, we refer to him as her boyfriend.

which he explained meant that the shooter was moving at the time the shots were fired.

¶8      At the jury instructions conference, the parties agreed that the trial court[4] should give the substantive instruction for first-degree reckless injury, WIS JI—CRIMINAL 1250. Ramczyk requested a self defense instruction. The State did not object and the instruction was given. Trial counsel did not request an instruction on the lesser-included offense of second-degree reckless injury.

¶9      The jury found Ramczyk guilty of first-degree reckless injury and found that he used a dangerous weapon during the offense. The trial court imposed a sentence of eighteen years, divided as twelve years of initial confinement and six years of extended supervision.

¶10     In December 2021, Ramczyk moved for postconviction relief on the ground of ineffective assistance of counsel. The circuit court denied his motion without a hearing. This appeal follows.

## DISCUSSION

¶11     Ramczyk argues that trial counsel provided ineffective assistance of counsel when he did not discuss the option of requesting a lesser-included jury instruction for second-degree reckless injury with him and when counsel did not request the lesser-included instruction. Although Ramczyk contends that trial counsel was deficient both for not discussing a lesser-included offense instruction

---

[4] The Honorable T. Christopher Dee presided over Ramczyk's trial. We refer to Judge Dee as the trial court. The Honorable David A. Feiss decided Ramczyk's postconviction motion. We refer to Judge Feiss as the circuit court.

with him and for not requesting one, the premise of both arguments, as we understand them, is that he was entitled to the instruction based on the evidence. Further, Ramczyk contends that the circuit court erred when it denied his postconviction motion without ordering a *Machner*[5] hearing.

¶12 A defendant is not automatically entitled to an evidentiary hearing on his or her postconviction motion. *State v. Bentley*, 201 Wis. 2d 303, 310, 548 N.W.2d 50 (1996). The postconviction court must hold an evidentiary hearing only if the defendant alleges "sufficient material facts that, if true, would entitle the defendant to relief," which is a question of law that we review independently. *State v. Allen*, 2004 WI 106, ¶¶9, 14, 274 Wis. 2d 568, 682 N.W.2d 433. If the motion does not set forth sufficient facts or presents only conclusory allegations, or the record establishes conclusively that the defendant is not entitled to relief, the circuit court may grant or deny a hearing at its discretion. *Id.*, ¶9.

¶13 Because Ramczyk's postconviction claim is based on ineffective assistance of counsel, he must allege sufficient material facts to prove that claim. To prove ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the defendant was prejudiced by counsel's performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Whether trial counsel's performance was ineffective is a question of law that we review independently. *State v. Balliette*, 2011 WI 79, ¶19, 336 Wis. 2d 358, 805 N.W.2d 334.

---

[5] *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

¶14 We follow a two-step process to determine "whether a lesser[-]included instruction should be given." *State v. Muentner*, 138 Wis. 2d 374, 387, 406 N.W.2d 415 (1987). First, we determine as a matter of law whether the offense was a lesser included offense. *Id.* The parties do not dispute that second-degree reckless injury is a lesser-included offense for first-degree reckless injury. "Both first- and second-degree reckless injury require proof of reckless conduct causing great bodily harm. WIS. STAT. § 940.23. First-degree reckless injury includes an aggravating element, proof that the perpetrator acted with 'utter disregard for human life.'" *State v. Miller*, 2009 WI App 111, ¶32, 320 Wis. 2d 724, 772 N.W.2d 188 (footnote omitted).

¶15 Second, we determine whether "reasonable grounds exist in the evidence both for acquittal on the greater offense and conviction on the lesser offense." *Id.*, ¶48. This step "involves a weighing of the evidence which would be presented to the jury." *Muenter*, 138 Wis. 2d at 387. Therefore, the question in this case is whether, under the evidence presented at trial, there were reasonable grounds for both acquittal on the first-degree reckless injury charge and conviction on the second-degree reckless injury lesser-included offense. "When determining whether these instructions should be provided, the evidence is viewed in the light most favorable to the defendant[.]" *State v. Johnson*, 2021 WI 61, ¶3, 397 Wis. 2d 633, 961 N.W.2d 18. Because we determine that the evidence does not reasonably support an acquittal on the greater charge—first-degree reckless injury—and conviction on the lesser charge—second-degree reckless injury—we conclude that trial counsel was not deficient and thus not ineffective. *See Miller*, 320 Wis. 2d 724, ¶46; *State v. Van Straten*, 140 Wis. 2d 306, 320, 409 N.W.2d 448 (Ct. App. 1987) (rejecting defendant's claim that counsel was ineffective for

failing to consult with him on a lesser-included offense instruction and failing to request such an instruction because the evidence did not support the instruction).

¶16   Because "utter disregard for human life" is the only element that is different between first- and second-degree reckless injury, we must weigh the facts of this case and determine whether Ramczyk acted with an utter disregard for human life. "In analyzing whether the defendant acted with utter disregard for human life, the factfinder examines the 'totality of the circumstances' including the time before, during, and after the crime." *Johnson*, 397 Wis. 2d 633, ¶29. The "test for determining utter disregard for human life is an objective test that focuses on what a reasonable person in similar circumstances would have known." *State v. Jensen*, 2000 WI 84, ¶3, 236 Wis. 2d 521, 613 N.W.2d 170. Further, courts consider many factors when considering whether conduct shows utter disregard for human life, including

> the type of act, its nature, why the perpetrator acted as he/she did, the extent of the victim's injuries and the degree of force that was required to cause those injuries. We also consider the type of victim, the victim's age, vulnerability, fragility, and relationship to the perpetrator. And finally, we consider whether the totality of the circumstances showed any regard for the victim's life.

*Miller*, 320 Wis. 2d 724, ¶34 (citation omitted).

¶17   Ramczyk contends that we should construe the shots fired at the Lexus as made in fear of his own life, and that the shots were not necessarily fired with utter disregard for the occupants in the vehicle behind him. *See Johnson*, 397 Wis. 2d 633, ¶31. We reject this argument because there is no evidence in the record to support it. There is no evidence of previous contact between Ramczyk and the other vehicles' occupants. While there was a chase in the parking lot,

there was no evidence that the Audi could not have driven away from the fight without Ramczyk's intervention.

¶18 Instead, the evidence shows that Ramczyk acted with utter disregard for human life. First, C.B. testified that the prior day, there had been a fist fight at a roller skating rink involving people other than Ramczyk, but he came along to the planned continuation of that fight at the Mitchell Park Domes. Prior to going to the fight, Ramczyk had shared a picture of a gun in a social media exchange and stated, "they don't want none we got big bois round here." Further, C.B.'s testimony put Ramczyk in the backseat of the Audi, behind the driver during the chase. The surveillance video captured the rear driver's side door opening and an arm sticking out and pointing a gun at the Lexus from the rear seat of the Audi. C.B. testified that she heard the shots coming from inside the Audi. Detective Rydzewski testified that the bullet casings showed that the shots were fired in short succession from a moving vehicle. The circuit court concluded that Ramczyk "brought a gun to a fist fight and fired it through the windshield of another vehicle after that vehicle followed his around a parking lot (the pre-determined meeting spot for said fist fight)." Ramczyk shot four times at close range into the Lexus, which Ramczyk knew was occupied because the vehicle was following the vehicle he was in. He fired one shot directly through the windshield at close range knowing that there were people inside the vehicle.

¶19 Ultimately, we conclude that no jury could conclude that Ramczyk acted without utter disregard for human life. Under the objective standard to measure utter disregard for human life, a reasonable person in Ramczyk's position would have realized that when he fired four shots at the Lexus, he was doing so with no regard for the lives of the people in the car. Therefore, the only reasonable view of the evidence was that Ramczyk fired the four shots at the

9

Lexus with utter disregard for the lives of the people in the car, which satisfies that element of first-degree reckless injury. No reasonable jury could determine that Ramczyk did not act with an utter disregard for human life.

¶20 Ramczyk relies on *Johnson* in support of his claim; however, this reliance is misplaced. In *Johnson*, our supreme court concluded that the defendant's decision to bring a gun when he broke into his brother-in-law's house in the night could be an act of self-defense and not necessarily utter disregard for human life because he was not looking for a confrontation with his brother-in-law, but instead searched for two hours, undetected, for evidence to prove that his brother-in-law had child pornography on his computer. *Id.*, 397 Wis. 2d 633, ¶¶1, 23, 30. Further, Johnson had previous experiences with his brother-in-law that made him fear for his safety and brought a gun for his own protection. *Id.*, ¶¶23, 30. In contrast, Ramczyk fired four shots at strangers during an interaction that surveillance camera footage showed lasted less than thirty seconds. Johnson was alone in a room with no means of escape, believed his brother-in-law knew precisely why he was there, and Johnson responded with lethal force—shooting five times—when his brother-in-law opened the door and lunged at him. *Id.*, ¶23-25. In contrast, there was no evidence that Ramczyk had prior interactions with the other vehicles' occupants. While we can understand that a car chase may be highly charged, in the totality of the circumstances, a reasonable person would have known that shooting four times at an occupied vehicle showed no regard for human life.

¶21 Instead, we consider our conclusion in *State v. Bernal*, 111 Wis. 2d 280, 330 N.W.2d 219 (Ct. App. 1983), to be applicable. There, the defendant saw his wife at the bar with another man, intentionally shot his wife, and then shot twice when his wife's male friend charged at him. *Id.* at 282. We concluded that

"[i]ntentionally pointing a loaded gun ready to shoot at another person is conduct imminently dangerous to another." *Id.* at 285. "Unless it is privileged or otherwise defensible, the act evinces a depraved mind, regardless of human life, whether the person holding the weapon intends to frighten, intimidate or stop the other person and does not intend to shoot." *Id.*[6] Ramczyk fired four shots in close succession at an occupied SUV, including one shot directly through the windshield at close range. His conduct was imminently dangerous and showed utter disregard for human life.

¶22 "If a reasonable view of the evidence both casts reasonable doubt on the [first-degree reckless injury] charge *and* supports a guilty verdict on [second-degree reckless injury]," then the evidence supports giving the lesser-included offense jury instruction. *See State v. Barreau*, 2002 WI App 198, ¶17, 257 Wis. 2d 203, 651 N.W.2d 12. Because we conclude that the evidence does not support giving the lesser-included offense jury instruction, trial counsel's failure to discuss or request the lesser-included offense instruction did not constitute deficient performance. *See State v. Smith*, 170 Wis. 2d 701, 715, 490 N.W.2d 40 (Ct. App. 1992). Further, because we need not analyze prejudice if deficiency has not been proven, we conclude that Ramczyk's ineffectiveness claim fails. *See Strickland*, 466 U.S. at 697. Thus, the record conclusively demonstrates that Ramczyk's relief would not be granted; therefore, the circuit court acted within its discretion when it denied Ramczyk's postconviction motion without a hearing. *See Allen*, 274 Wis. 2d 568, ¶9.

---

[6] The phrase 'utter disregard for human life' has the same meaning as 'depraved mind, regardless of life,' the former language used in the Wisconsin code until 1987 to denote the aggravating element in crimes of recklessness." *State v. Miller*, 2009 WI App 111, ¶32, 320 Wis. 2d 724, 772 N.W.2d 188.

## CONCLUSION

¶23     We conclude that under the facts of this case that Ramczyk was not entitled to a lesser-included offense instruction for second-degree reckless injury, and therefore, trial counsel was not ineffective.  Accordingly, the circuit court did not err when it denied his motion for postconviction relief without a hearing.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.