Harold EARL, Petitioner-Appellant,

v.

Thomas ISRAEL, Respondent-Appellee.

No. 83–1883.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 29, 1985.
Decided June 11, 1985.

Cudahy, Circuit Judge, concurred and filed opinion.

James A. Walrath, Shellow, Shellow & Glynn, S.C., Milwaukee, Wis., for petitioner-appellant.

Thomas J. Balistreri, Wis. Dept. of Justice, Madison, Wis., for respondent-appellee.

Before CUDAHY, POSNER and FLAUM, Circuit Judges.

POSNER, Circuit Judge.

Harold Earl appeals from the district court's order denying his petition for habeas corpus. Earl had been sentenced to life imprisonment following his conviction of first-degree murder by a Wisconsin state court. After exhausting his state remedies he sought federal habeas corpus, arguing that he had not had effective assistance of counsel at his state trial.

Earl does not deny having stabbed to death Denise Stacy, a friend of his estranged wife, Nancy Earl. Nancy Earl testified that she overheard her husband say to a police officer, three days before Harold Earl killed Denise Stacy, "Damn, Denise, if she doesn't stay out of my business, I am going to kill that bitch." This testimony is the focus of Earl's complaint about the effectiveness of his trial lawyer's efforts on his behalf. The testimony almost certainly was false. Both police officers denied under oath—but in post-conviction proceedings, not at the trial—that Earl had threatened Denise during the incident about which Nancy Earl had testified. But Earl's lawyer failed to interview the officers, and not knowing what their testimony would be did not call them as witnesses to rebut Nancy Earl's testimony.

One of the officers had been listed before trial as a prosecution witness, with the notation beside his name, "prior contact and threat." This notation led defense counsel, rather than investigate, to move the trial judge, before trial, to exclude from the trial any statements made by Harold Earl that had not been furnished to the defense pursuant to its discovery request. The trial judge granted the motion. He again ruled at the opening of trial that the prosecutor was not to go into the matter of threats unless defense counsel "open[ed] the door on threats on direct or cross." During the trial defense counsel asked Harold Earl whether he had ever intended to kill Denise Stacy, and he answered "no." On cross-examination, over objection, the prosecutor asked Earl whether he had ever threatened Denise Stacy's life. Earl answered "no." After the completion of the defense case, the prosecutor called Nancy Earl as a rebuttal witness, and she gave the testimony we quoted earlier. Defense counsel asked for a continuance to enable him to interview Nancy Earl and other witnesses—presumably the officers who had been present when Harold Earl had made the alleged statement. The trial judge said, "You can talk to her right now," and when defense counsel came back with, "What about witnesses to the statement?," the trial judge said: "I think beyond that, I don't see any surprise to the defense...." Defense counsel took this to mean that he was precluded from talking to the officers, and he did not talk to them or call them as witnesses. The Wisconsin court of appeals found that the judge had not intended to prevent defense counsel from interviewing the witnesses; there had been "a mix-up in communication, but we now understand why Johnson [Harold Earl's trial lawyer] did not talk to the officers. He believed the trial court had foreclosed him from speaking with" them.

The representation to which a criminal defendant is constitutionally entitled requires his lawyer, before trial, to look for evidence that will be helpful to the defendant; but of course if it is reasonable in the circumstances not to conduct a particular investigation, the lawyer's failure to do so will not establish ineffective representation. *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). Earl's lawyer testified in the Wisconsin post-conviction proceeding that preceded this habeas corpus action that he had figured that if his motion to exclude evidence of death threats was denied, he would then have time to investigate them; and if it was granted, he would not have to investigate them. He cannot be criticized for *making* the motion. He testified (in the state post-conviction proceeding) that by making the motion in the form he did—a motion to exclude all statements of Earl that had not been furnished to the defense in response to its discovery request—he had hoped to induce the prosecutor to make a more extensive response to that request, so that it would be easier to prepare a defense. This was not a foolish or reckless tactic, especially when it succeeded beyond the lawyer's expectations: the judge's granting the motion seemed to eliminate the issue of threats from the case, and to make the notation about threats next to the name of one of the prosecution's witnesses moot.

Of course there was always a chance that developments at trial would result in reopening the issue. But it was not so unreasonable as to be unprofessional for defense counsel to assume that he need not conduct an investigation into the factual background of an issue that he had succeeded in getting excluded from the trial—to assume that if it should unexpectedly pop up in the trial he would have an opportunity to investigate then. A more cautious and far-seeing lawyer would have gone ahead and interviewed the policemen—not a burdensome undertaking. But a lawyer's failure to carry out his duties to his client with extraordinary skill and conscientiousness does not convict the lawyer of subminimum representation.

This conclusion pretty much dooms Earl's claim of ineffective assistance of counsel. For nothing that happened at the

trial indicates that Earl's counsel was professionally inadequate. It is true that if he had not asked Earl whether Earl had ever intended to kill Denise Stacy, Nancy Earl's testimony would not have been admitted. But counsel had no reason to think that asking that question would reopen the ruling on the admissibility of Earl's (alleged) statements. When during the trial the prosecutor had tried to get the judge to change his mind about the admission of the statement to Nancy Earl, the judge had said, "the prosecution will not go into the matter of threats of any nature with the witness, Nancy Earl, both against Stacy and Nancy Earl." This must have seemed pretty definitive, and emboldened Earl's counsel to question Earl about his intent to kill.

Even if counsel should have realized that the judge's earlier warning about "opening the door" remained in force, the judge had only warned against opening the door "on threats." Defense counsel could reasonably have understood by this that he was safe as long as he did not ask Earl whether Earl had ever threatened Denise Stacy. Counsel cannot be severely criticized for not having realized that *any* inquiry into Earl's intent to kill would "open the door," when that intent was a central issue in the case and was analytically distinct from the matter of threats.

■ Earl had stabbed a defenseless woman to death with repeated jabs of a kitchen knife, one of which was seven inches deep and penetrated the heart. His intent to kill was not negated by the lack of advance planning. "No appreciable space of time is required to elapse between the formation of the intent to kill and the act of killing in order for the homicide to be first-degree murder." *Brook v. State*, 21 Wis.2d 32, 45, 123 N.W.2d 535, 541 (1963); *State v. Clifford*, 58 Wis. 477, 489, 17 N.W. 304, 308 (1883); see Wis.Crim.Code § 940.-01; cf. *United States v. Solina*, 733 F.2d 1208, 1214–15 (7th Cir.1984). The defense presented some, but not convincing, psychological evidence; one witness inferred that Earl had not intended to kill Stacy by noting that there were no stab wounds in her back, and another inferred lack of in-

tent to kill from the fact that the IQ test he administered to Earl showed an IQ of only 55, which is moderately retarded. Yet the IQ test contained on the one hand difficult questions (such as the height of the average American woman), and on the other hand questions easy to answer in a way suggestive of retardation (e.g., how many months are there in a year?), plus questions that have to do with morality rather than intelligence (such as, what would you do if you found a stamped, addressed envelope in the street?). Earl's principal defense, therefore, feeble though it was, was self-defense; Denise Stacy had come at him with a knife, and he had wrested it from her and killed her with it. Earl does not argue that his counsel was unprofessional in putting on such a defense; and there was no way to make out the defense without Earl's being called as a witness. Even if his counsel had not asked him whether he had ever intended to kill Stacy, the prosecutor could still have argued that Earl's testimony of self-defense opened up the issue of threats, since if Earl had threatened Stacy's life, this would make his defense of self-defense less believable.

Defense counsel objected vigorously when the prosecutor on cross-examination asked Earl about threats, and later when the prosecutor put on Nancy Earl as a rebuttal witness; counsel tried to interview witnesses to the statement; and though he misunderstood the judge as forbidding him to do so, the misunderstanding was a reasonable one. A more alert and determined lawyer might have pressed the point harder and a more daring lawyer might have taken a chance and called the officers as witnesses without first interviewing them (though it is not altogether clear that the trial judge would have allowed this); but it is not unreasonable for a lawyer to obey what he thinks is the judge's ruling, even though the ruling might not be 100 percent clear. Lawyers naturally hesitate to antagonize judges by pressing points after the judge appears to have ruled on them.

■ Considered all in all, the representation of Harold Earl did not fall below minimum professional standards; indeed, but for the judge's somewhat erratic conduct

 

of the trial—of which however, Earl does not complain—the representation would have been flawless. In any event, we do not think that Earl was prejudiced; and prejudice is an independent requirement for finding that a criminal defendant's constitutional right to effective assistance of counsel has been violated. *Strickland v. Washington, supra,* 104 S.Ct. at 2064. If the officers had testified, they would not have testified that Earl had made no threats; they would have testified, rather, that it was Nancy Earl's life, rather than Denise Stacy's, that Earl had threatened; and in the circumstance this would not have made a critical difference. Earl went to his wife's house. She wasn't there. Denise Stacy was. She was his wife's friend. He stabbed her repeatedly and ferociously. Bear in mind that the fact that he decided on the spot to kill her would not affect his guilt of first-degree murder, that his psychiatric evidence was weak, and that his only defense was self-defense. That defense, in part because it was uncorroborated and implausible, would not have been bolstered by Earl's proving that he had not threatened Denise Stacy—but had threatened his wife. It is true that after retiring to deliberate the jury asked the judge to repeat the instructions on first- and second-degree murder, but we do not think the jury's verdict would have been different—provided they followed the judge's instructions—if Nancy Earl had not been permitted to testify, or if Harold Earl had been permitted to rebut her testimony with testimony by the two officers. The evidence of Earl's guilt of first-degree murder was overwhelming. In Wisconsin second-degree murder (so far as relevant here) is causing the death of a human being "by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life." Wis.Crim.Code § 940.-

02(1). It is illustrated by *State v. Bernal,* 330 N.W.2d 219, 220–22 (Wis.App.1983), where the defendant shot at the victim's legs, but killed him. Harold Earl's killing of Denise Stacy was deliberate.

AFFIRMED.

CUDAHY, Circuit Judge, concurring.

I do not agree that the failure of the police officers to testify was not prejudicial. The testimony seems to me to have been crucial in removing reasonable doubt about the defendant's intent in conducting his altercation with Denise Stacy.[1] I am persuaded, however, that this failure to testify did not result from unconstitutionally ineffective assistance of counsel but rather from a series of misadventures relating in part, as the majority puts it, to "the judge's somewhat erratic conduct of the trial." I therefore concur in much of the analysis provided by the majority as well as in the result.

1. The majority suggests that the evidence against Earl was overwhelming. Not so. No witnesses were present when the scuffle between Earl and Stacy occurred. Further, Dr. Harold Wagner, an experienced forensic pathologist, testified that, based upon his review of the circumstances surrounding Stacy's death as well as the nature of the wounds inflicted, Earl's act was "not intended." Dr. McDonald, a clinical

psychologist, administered a series of tests to Earl, including the Wechsler Adult Intelligence Scale, from which he determined that Earl's "full scale IQ" was fifty-five, which classified him as severely retarded and in the range of border and severe mental deficiency. Dr. McDonald concluded that it was probable that Earl's act was unplanned and committed on impulse.