

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-28-1997

# United States v. Kauffman

Precedential or Non-Precedential:

Docket 96-7287

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"United States v. Kauffman" (1997). *1997 Decisions*. Paper 73.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/73

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 28, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-7287

UNITED STATES OF AMERICA

v.

KOURTNEY KAUFFMAN
        Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

(D.C. Criminal No. 92-cr-00268)

ARGUED NOVEMBER 12, 1996

Before: ALITO, ROTH and LEWIS, Circuit Judges .

(Filed March 28, 1997)

        Daniel M. Pell (ARGUED)
        425 West Market Street
        York, PA 17404

         Attorney for Appellant

          Eric Pfisterer (ARGUED)
          Office of United States Attorney
          Federal Building
          228 Walnut Street
          Post Office Box 11754
          Harrisburg, PA 17108

           Attorney for Appellee

OPINION OF THE COURT

LEWIS, Circuit Judge.

Kourtney Kauffman appeals from the order of the district court denying his motion to vacate, set aside or correct sentence under 28 U.S.C. S 2255, on the ground of ineffective assistance of counsel. Kauffman's claim was based, inter alia, on his counsel's failure to conduct any pre-trial investigation, or contact potential witnesses in connection with a possible insanity defense. We have jurisdiction under 28 U.S.C. SS 2253 and 2255. Because ineffective assistance of counsel claims present mixed questions of law and fact, our review is plenary. Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987).

I.

A.

On July 19, 1991, Kourtney Kauffman was released, against the advice of his psychiatrists, from Edgewater Psychiatric Center in Harrisburg, Pennsylvania, where he had been involuntarily committed since July 14, 1991.1 On July 12, 1991, just two days prior to Kauffman's commitment, three shotguns and two rifles were reported stolen from a residence in Hellam Township, Pennsylvania.

_____

1. Prior to Kauffman's discharge, Edgewater petitioned the Court of Common Pleas of Dauphin County, Pennsylvania, for an order of involuntary commitment for Kauffman. The court denied the hospital's petition.

Kauffman was arrested on July 24, 1991, five days after his discharge from Edgewater, while attempting to sell four of these stolen guns to a firearms dealer in a transaction monitored by the police.2

Immediately following his arrest on July 24, 1991, Kauffman was examined by Dr. Jacob Stacks, a psychiatrist at Harrisburg State Hospital. In a discharge summary prepared by Dr. Stacks, he stated that Kauffman "went into the York County Prison on 7/24/91 with a charge of receiving stolen property. He was undoubtedly psychotic at that time." On March 25, 1992, Dr. Stacks wrote a letter to attorney Steven Zorbaugh, who was representing Kauffman at the time, stating that in his opinion Kauffman was manic and psychotic "at the time of the committing of the crime he was charged with." Despite the exculpatory nature of this letter, Zorbaugh declined to investigate further a possible insanity defense and advised Kauffman to plead guilty.

On February 19, 1993, acting upon the advice of counsel, Kauffman pleaded guilty, pursuant to a plea agreement with the government, to a one-count indictment which charged Kauffman with being a felon in possession of firearms in violation of 18 U.S.C. SS 922(g) and 924(c). Kauffman was sentenced to 15 years imprisonment pursuant to 18 U.S.C. S 924(e), the mandatory minimum sentence for violation of the armed career criminal offender statute.

On January 24, 1994, Kauffman filed a pro se motion pursuant to 28 U.S.C. S 2255 to vacate, set aside or correct sentence, which the district court denied without a hearing on March 25, 1994. Kauffman then retained private counsel and timely filed a second habeas motion on February 13, 1995. In his petition, Kauffman asserted that he was entitled to habeas corpus relief because Zorbaugh

_____

2. Initially, state charges were brought against Kauffman. Kauffman retained Steven Zorbaugh as his lawyer and on July 9, 1992, Kauffman pleaded guilty to four counts of receiving stolen property arising out of the sale of four of the five guns described above. Zorbaugh was then appointed by the district court to represent appellant on the pending federal charges which are the subject of this opinion.

3

rendered ineffective assistance by failing to counsel him regarding his right to proceed to trial and present an insanity defense. Kauffman also contends that his former attorney incorrectly advised him that probation was a possible sentence if a downward departure motion was granted. Moreover, Kauffman contends that his prior counsel should be deemed per se ineffective because his attorney was himself suffering from a debilitating mental condition.

We vacated the judgment of the district court denying Kauffman's second petition and remanded for an evidentiary hearing on December 6, 1995. At the conclusion of the evidentiary hearing, the district court denied the habeas petition. Kauffman once again appeals. For the reasons which follow, we will reverse and remand to the district court for a new trial.

B.

At the evidentiary hearing ordered by this court, Steven Zorbaugh testified that he remembered Kauffman bringing Dr. Stacks' letter, describing Kauffman as manic and psychotic when he was arrested for the offense, to his law office for review. Zorbaugh admitted to having no conversation about Kauffman's mental status with any physician or making any review of the medical records, or doing any research on the federal insanity defense. The reason Zorbaugh gave for advising Kauffman to plead guilty and not tender an insanity defense at trial was that Kauffman had pleaded guilty to state charges of receiving stolen property. In Zorbaugh's words:

> you go through . . . a written plea colloquy that was about ten or eleven pages I believe, plus an oral colloquy that included questions like did you understand what you were doing, did you know it was illegal. And you have to answer these questions. And I felt that would be an additional barrier in Federal Court because I felt the prosecutor could use those to establish that he knew what he was doing.

Zorbaugh also stated his belief that Kauffman's act of hiding the stolen property would impede a successful

4

insanity defense in that it further enabled the government to show that Kauffman was aware of the consequences of his actions.

Yet, the hearing as a whole uncovered substantial evidence which would support Kauffman's claim that an insanity defense was nonetheless viable. For example, Dr. Denis Milke, a Board Certified psychiatrist who is the Medical Director of Edgewater Psychiatric Center and was Kauffman's attending physician, testified that as of the date of discharge from Edgewater, Kauffman's mental status as reflected in the medical records was that of a person whose judgment was markedly compromised, with limited insight and poor reliability. He also testified that Kauffman was released against medical advice just prior to the commission of the offense. In fact, Dr. Milke wanted Kauffman immediately transferred to Harrisburg State Hospital, a long term care facility.

Dr. Milke identified Kauffman's illness as a bipolar disorder. He explained that Kauffman's thought disorder is characterized by grandiose thought, loose associations, tangentiality, chronic poor judgment, with some degree of paranoid perceptions. He also stated that treatment of Kauffman's condition required psychotropic drugs, and that as of the date of discharge Kauffman did not have sufficient Lithium in his blood stream to control the symptoms of his bipolar disorder. Finally, Dr. Milke testified that a bipolar disorder affects a person's ability to appreciate the wrongfulness of his or her conduct.

The district court also heard testimony from Mr. Patrick Gallagher, an employee of York Hospital. Mr. Gallagher had been the mental health counselor at York County Prison in July, 1991. He testified that he saw Kauffman on his admission to York County Prison on July 24, 1991, and that Kauffman was clearly psychotic at that time. He recalled discussing Kauffman's condition with Dr. Jacob Stacks, the supervising physician and psychiatrist, perhaps as early as July 26, 1991, and that both he and Dr. Stacks agreed that Kauffman should be committed to a psychiatric facility.

Mr. Gallagher further stated that on or about July 26, 1991, Kauffman was engaging in "jerky" movements, was

very suspicious and angry, was suffering from a thought disorder, was out of touch with reality, did not understand the consequences of his actions and would not have appreciated the wrongfulness of any criminal conduct. In fact, Mr. Gallagher recalled that Kauffman attacked a guard on or about July 26, 1991, and as a result was placed in isolation.

Robert H. Davis, M.D., a Board Certified Psychiatrist at the Harrisburg State Hospital, also testified on behalf of Kauffman as an expert. Dr. Davis testified that Kauffman was suffering from a severe mental disease such that he was unable to appreciate the wrongfulness of his acts. He further stated that had an attorney come to him regarding the viability of an insanity defense in this case, he would have advised the attorney that such a defense would be viable:

> He has a clear history of a major psychiatric disorder. The history of the disorder predates the crime for which he is being charged. So it is a well documented history. And the nature of his disorder is one that leads to impaired judgment, psychotic symptoms. And that is the type of disorder that very much often leads to a very successful insanity defense.

C.

After hearing the testimony on Kauffman's psychiatric condition, the district court concluded that Kauffman's former attorney, Steven Zorbaugh, did not render ineffective assistance when he declined to pursue investigation into an insanity defense by conducting research and interviewing potential witnesses. The district court also concluded that Kauffman failed to make a showing of prejudice attributable to Zorbaugh's actions.

The district court reasoned that Zorbaugh's failure to pursue any investigation into an insanity defense was based on two legitimate considerations. First, Kauffman admitted he had the guns in question and made arrangements with a dealer to sell them for profit. This, Zorbaugh believed, showed that Kauffman knew what he was doing and appreciated the nature and quality of the

6

acts. Second, Kauffman had entered into a prior detailed plea colloquy at the state court level in which he acknowledged his guilt on the charge of receiving stolen property (the guns which are the subject of the federal charge). Because Zorbaugh was faced with two impediments to an insanity defense, on the one hand, and the potential for a downward departure motion for substantial assistance on the other, the district court determined that he had made a reasonable tactical decision to advise his client to plead guilty.

II.

A.

A court must be "highly deferential" to counsel's decision and there is a "strong presumption" that counsel's performance was reasonable. Strickland v. Washington, 466 U.S. 668, 689 (1984). "The defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.' " Id. at 689. "It is [ ] only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989).

In order for a defendant to gain relief because his counsel was ineffective, the defendant must satisfy the two-pronged test announced in Strickland v. Washington, 466 U.S. 668 (1984). The defendant must show "(1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's error, the result would have been different." United States v. Nino, 878 F.2d 101, 103 (3d Cir. 1989), citing Strickland, 466 U.S. at 687-96. Both Strickland prongs must be met. Nino, 878 F.2d at 104.

This two-part test is applicable to petitioners who challenge the effectiveness of counsel after the entry of a guilty plea. Hill v. Lockhart, 474 U.S. 52 (1985). When such persons enter a plea of guilty on the advice of counsel, the voluntariness of the plea depends on whether there is a

7

reasonable probability that, but for counsel's errors, the defendant would have proceeded to trial instead of pleading guilty. Parry # BH-2648 v. Rosemeyer, 64 F.3d 110, 118 (3d Cir. 1995). A reasonable probability is one which is "sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

B.

In applying the first prong of Strickland's two-part test, we must determine whether Kauffman's prior counsel exercised reasonable professional judgment despite his failure to pursue an investigation of a letter from Kauffman's treating psychiatrist which stated that Kauffman was manic and psychotic at the time of the commission of the offense.

As we explained in United States v. Gray, 878 F.2d 702 (3d Cir. 1989), "failure to conduct any pretrial investigation generally constitutes a clear instance of ineffectiveness." Gray, 878 F.2d at 711. See also Code v. Montgomery, 799 F.2d 1481, 1483 (11th Cir. 1986) (counsel's performance fell below competency standard where he interviewed only one witness); Nealy v. Cabana, 764 F.2d 1173, 1177 (5th Cir. 1985) ("[A]t a minimum, counsel has the duty to interview potential witnesses and to make an independent investigation of the facts and circumstances of the case."). While counsel is entitled to substantial deference with respect to strategic judgment, an attorney must investigate a case, when he has cause to do so, in order to provide minimally competent professional representation. Gray, 878 F.2d at 711.

Here, Zorbaugh admitted that even though he had a letter from Kauffman's psychiatrist concerning Kauffman's mental condition, he did not pursue any investigation into an insanity defense. While we recognize that Zorbaugh may have found the strength of the government's case daunting, we can imagine no reasonable professional calculation which would support Zorbaugh's failure to conduct any pre-trial investigation into the facts and law of an insanity defense under the circumstances of this case. See Strickland, 466 U.S. at 690-91 ("[A] court deciding an

8

actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case.").

Only if Zorbaugh had investigated Kauffman's long history of serious mental illness, and conducted some legal research regarding the insanity defense could his counseling be characterized as "strategy." Instead, his failure to investigate or research the insanity issue at all resulted in a cursory, uninformed judgment call which deprived Kauffman of the affirmative defense of insanity and the meaningful representation which the Constitution requires. Accordingly, we conclude that Zorbaugh's performance fell below an objective standard of reasonableness, and that Kauffman has satisfied the first prong of Strickland.

C.

The fact that counsel was ineffective is not in itself sufficient to grant relief under Strickland. Under Strickland's second prong (the "prejudice" requirement), if the ineffectiveness alleged was a failure to investigate thoroughly, which in turn caused the defendant to plead guilty, the defendant must show a likelihood that some evidence would have been discovered which would have caused the attorney to change his recommendation to enter into a plea agreement. See Hill v. Lockhart, 474 U.S. 52, 59 (1985). In other words, Kauffman must show that Zorbaugh's representation fell below an objective standard of reasonableness, and that but for Zorbaugh's errors, Kauffman would have insisted on going to trial rather than plead guilty. Id. at 56-60.

In this case, minimal factual investigation by Zorbaugh would have uncovered Kauffman's long-standing history of bipolar syndrome and his numerous psychotic episodes leading to multiple psychiatric hospitalizations, all of which preceded the offense of July 24, 1991. In addition, several doctors were willing to testify that Kauffman was hypomanic on his release from Edgewater Psychiatric Center on July 19, 1991, and totally psychotic by the time he reached York County Prison.

9

While it is unlikely that we can determine with precision what the result of the proceedings would have been if counsel had not erred, the breadth of evidence adduced at the evidentiary hearing is sufficient to undermine our confidence that Zorbaugh would have advised his client to plead guilty rather than proceed to trial and that Kauffman would have accepted that advice. Parry # BH-2648 v. Rosemeyer, 64 F.3d 110, 118 (3d Cir. 1995). Thus, the defendant has met his burden of showing a reasonable probability that the outcome of these proceedings would have been different had his counsel not failed in his duty to investigate the evidence obtainable from various health professionals. See United States v. Nino, 878 F.2d 101, 103 (3d Cir. 1989), citing Strickland v. Washington , 466 U.S. 668, 687-96 (1984). This evidence was crucial in providing background information supporting an affirmative defense to the crime, and casting doubt on the government's case with respect to Kauffman's criminal intent.

We therefore conclude that the district court's determination that Zorbaugh's ineffective assistance did not prejudice Kauffman cannot stand. For these reasons, we will reverse and remand for a new trial.3

III.

For the foregoing reasons, the order of the district court denying Kauffman's motion under 28 U.S.C. S 2255 will be reversed, and this case will be remanded with directions to grant Kauffman's motion to vacate, set aside or correct the sentence and to grant Kauffman a new trial.

_____

3. Since we are satisfied that Zorbaugh's failure to conduct the proper pre-trial investigation requires reversal, we need not explore Kauffman's subsidiary arguments regarding Zorbaugh's questionable legal advice on the issue of downward departure, nor his contention that Zorbaugh should be deemed per se ineffective due to his own emotional problems, which Zorbaugh himself described to the district court.

ALITO, Circuit Judge, dissenting:

Steven Zorbaugh, Kourtney Kauffman's attorney, advised Kauffman that he should plead guilty to a charge of possession of a firearm by a convicted felon rather than proceed to trial and present an insanity defense. The majority holds that because of Zorbaugh's "failure to investigate or research the insanity issue at all," this advice was "a cursory, uninformed judgment call" (Maj. Op. at 9) so inexcusable as to fall outside "the wide range of reasonable professional assistance," Strickland v. Washington, 466 U.S. 668, 689 (1984) (citation omitted), within which counsel may make tactical decisions without fear of judicial second-guessing. I believe that in light of the particular facts of this case -- specifically, the knowledge that Zorbaugh already possessed by virtue of his prior representation of Kauffman on the related state charges -- Zorbaugh's advice is properly viewed under our precedents as a tactical decision that, while perhaps debatable, remains safely within the expansive realm of constitutional reasonableness. I therefore respectfully dissent.

The majority relies heavily on our statement in United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989), that "failure to conduct any pretrial investigation generally constitutes a clear instance of ineffectiveness," and upon Zorbaugh's admission that he "did not pursue any investigation into an insanity defense." Maj. Op. at 8 (emphasis in original). This case, however, is crucially different from Gray. In that case, the defendant had told his attorney that there were numerous eyewitnesses and had provided him with the names of several and information with which to locate others. 878 F.2d at 711-12. Nevertheless, the attorney did not contact any of the witnesses, did not visit the scene of the incident that led to the defendant's arrest, did not take any action whatsoever designed to investigate his client's theory of self-defense, and did not hire or seek funds to hire an investigator to perform any of these tasks. Id. Instead, the attorney took Gray's case to trial and presented a theory of self-defense without doing anything to try to ensure the viability of that defense. As we emphasized, "[c]ounsel offered no strategic justification for his failure to make any effort to investigate

11

the case, and indeed he could have offered no such rationale." Id. at 711. In fact, the government conceded in that case that the attorney's "behavior was not colorably based on tactical considerations but merely upon a lack of diligence." Id. at 712. It was under these circumstances that we invoked counsel's duty to investigate, explaining that "[i]neffectiveness is generally clear in the context of complete failure to investigate because counsel can hardly be said to have made a strategic choice against pursuing a certain line of investigation when s/he has not yet obtained the facts on which such a decision could be made." Id. at 711.

The instant case is significantly different. Here, Zorbaugh had already represented Kauffman in connection with state charges arising out of the same incident as the federal charge. During that prior state representation, Zorbaugh had discussed the possibility of an insanity defense with Kauffman but had advised him to plead guilty because the Commonwealth was offering a plea bargain of time served and Kauffman was primarily concerned with getting out of jail. Thus, when he began to represent Kauffman in the federal case, Zorbaugh was already familiar with the facts and circumstances of Kauffman's allegedly criminal conduct and with Kauffman's mental condition. In particular, Zorbaugh knew that Kauffman had hidden the guns in a blanket in a remote barn and had negotiated a sale of one of them. At the evidentiary hearing in the district court, Zorbaugh testified that he believed that Kauffman's actions showed planning, concern for secrecy, and desire for profit, all of which, in his view, tended to show that Kauffman appreciated the nature and wrongfulness of his conduct. Moreover, Zorbaugh knew that at the state-court plea hearing, Kauffman had admitted, on the record, that he knew what he was doing and that he knew it was illegal.

Zorbaugh testified that he recalled Kauffman's giving him Dr. Stacks' letter, which described Kauffman as manic and psychotic at the time of the offense and thus indicated the possibility of an insanity defense. However, Zorbaugh stated that he did not pursue the issue because he believed that, given Kauffman's actions and his state-court plea colloquy,

12

an insanity defense was not likely to be successful. In addition, Zorbaugh had known Kauffman for over a year and had observed Kauffman's behavior. As the government's brief points out, Zorbaugh thus knew that Kauffman appeared normal, that his mental condition was easily controlled by medication, and that it was Kauffman's own choice whether or not to take the medication. While it is true that the doctors who testified in support of Kauffman at the evidentiary hearing were able to explain how a manic individual could appear to an observer to understand the nature and wrongfulness of his actions and yet suffer from such impaired judgment as to be disconnected from reality, Zorbaugh was familiar with Kauffman's behavior and reasonably believed that Kauffman simply did not present the compelling picture of insanity that a paranoid schizophrenic, for example, might present. Accordingly, Zorbaugh concluded that a jury would be unlikely to accept an insanity defense.

Under these circumstances, Zorbaugh's decision, unlike the dereliction of the defense attorney in Gray , can be said to be a "strategic choice against pursuing a certain line of investigation," because Zorbaugh was already in possession of "the facts on which such a decision could be made." Gray, 878 F.2d at 711. Cf. Jones v. Page, 76 F.3d 831, 843 (7th Cir. 1996) ("[i]f it is reasonable in the circumstances not to conduct a particular investigation, [a] lawyer's failure to do so will not establish ineffective representation") (quoting Earl v. Israel, 765 F.2d 91, 93 (7th Cir.), cert. denied, 474 U.S. 951 (1985)) (emendations in original); Crisp v. Duckworth, 743 F.2d 580, 583 (7th Cir. 1984) (recognizing that "there may be unusual cases when an attorney can make a rational decision that investigation is unnecessary"), cert. denied, 469 U.S. 1226 (1985). I therefore believe that this case is critically different from Gray.

The other two cases on which the majority relies-- Code v. Montgomery, 799 F.2d 1481 (11th Cir. 1986), and Nealy v. Cabana, 764 F.2d 1173 (5th Cir. 1985) -- are distinguishable as well. In Code, the attorney "attempted to present an alibi defense with no alibi witnesses." 799 F.2d at 1484. As the court unsurprisingly observed, the

13

attorney's conduct was "wholly unsupported by reasonable professional judgment; although his sole strategy was to present an alibi defense, he terminated his investigation without determining whether the one witness he contacted could provide an alibi." Id. In contrast, Zorbaugh's strategy was to obtain a plea agreement, encourage Kauffman to cooperate, and hope that the government would move for a downward departure, and Zorbaugh acted reasonably in furtherance of that strategy. His conduct can in no way be equated with that of an attorney who goes to trial with only one conceivable defense and no witnesses in support of it.

In Nealy, the attorney also prepared an alibi defense but took only minimal steps to attempt to contact one alibi witness and did nothing to attempt to contact two others, resulting in a similar presentation of an alibi defense at trial without alibi witnesses. See 764 F.2d at 1175–76. Since the attorney did not even argue that his conduct was "part of a calculated trial strategy," the court concluded that he "simply failed to make the effort to investigate," and held that he had furnished constitutionally defective assistance. Id. at 1178.

Under the circumstances of this case, it seems to me that Zorbaugh's decision to recommend a guilty plea without further investigation of a possible insanity defense did not violate Sixth Amendment standards. Familiar with the nature of Kauffman's conduct, his state-court guilty plea colloquy, his normal appearance, and the other circumstances mentioned above, Zorbaugh had grounds for questioning the wisdom of going to trial with an insanity defense. Moreover, like most experienced defense attorneys, Zorbaugh also undoubtedly knew that "successful invocation of the insanity defense is rare." AMERICAN PSYCHIATRIC ASSOCIATION, STATEMENT ON THE INSANITY DEFENSE 5 (1982).[1] Accordingly, I am unable to

---

1. Only 38 defendants were found not guilty by reason of insanity in federal courts nationwide in fiscal year 1995. U.S. Dept. of Justice, Statistical Report: United States Attorneys' Offices, Fiscal Year 1995, at 46. In fiscal year 1994, only 49 defendants were found not guilty by reason of insanity. U.S. Dept. of Justice, Statistical Report: United States Attorneys' Offices, Fiscal Year 1994, at 46.

14

conclude that Zorbaugh's recommendation to plead guilty, cooperate with the government, and hope for a motion for downward departure was so indefensible as to overcome the "strong presumption that [his] conduct falls within the wide range of professional assistance." Strickland, 466 U.S. at 689. While the majority recites that "counsel is entitled to substantial deference with respect to strategic judgment," (Maj. Op. at 8) in my view it fails to heed that important admonition.2

_____

2. I do not believe that Kauffman's "subsidiary arguments", Maj. Op. at 10 n.3, require extended discussion. Kauffman argues that Zorbaugh's representation should be deemed per se ineffective because Zorbaugh was experiencing mental problems of his own. He also contends that Zorbaugh rendered ineffective assistance by advising Kauffman that, if he did not plead guilty and accept responsibility, he would have no chance of receiving a motion for downward departure, as well as by leading Kauffman to believe that if he cooperated with the government, he might receive probation.

As for the first contention, it is undisputed that Zorbaugh experienced emotional problems at or near the times in question, but Kauffman has failed to present any evidence that Zorbaugh was incapacitated to such an extent as to merit being deemed per se ineffective. Kauffman's second contention is completely meritless. While it is true that acceptance of responsibility and a motion for downward departure are technically distinct issues, Zorbaugh did not act unreasonably in advising Kauffman that he would be effectively foreclosed from receiving the latter unless he did the former. Kauffman argues that the existence of the 15-year mandatory minimum under which he was sentenced made it unreasonable for Zorbaugh to represent that if Kauffman cooperated, he might receive probation. However, Kauffman's argument overlooks the fact that if the government had moved for a downward departure (it did not, apparently because Kauffman was either unable or unwilling to provide the requisite assistance), the court could have departed from the otherwise-mandatory sentence and imposed probation. While this was perhaps unlikely, it was not unreasonable for Zorbaugh to inform Kauffman that the likelihood of receiving probation "really depends on how successful and how much he is able to cooperate." App. 248. The district court found that Kauffman had understood that he would likely receive the 15-year mandatory minimum and that he had not been promised probation. I perceive no basis to overrule this finding.

15

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit