# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE  : ID No. 1706021079
           :
v.          :
           :
BRETT SCOTT,    :
           :
    Defendant.  :

Submitted: August 30, 2023
Decided: October 20, 2023

## ORDER

On this 20th day of October 2023, upon consideration of Defendant Brett Scott's motion for postconviction relief, the Commissioner's Report and Recommendation, Mr. Scott's appeal of the Report, and the record in this case, it appears that:

1. On July 26, 2018, a jury found Mr. Scott guilty of one count of Murder in the Second Degree, 11 *Del. C.* § 635(2), as a lesser included offense of Murder in the First Degree; one count of Attempted Robbery in the First Degree, 11 *Del C.* § 832(c); one count of Possession of a Firearm during the Commission of a Felony, *11 Del C.* §1447 (A); and one count of Conspiracy in the Second Degree, 11 *Del C.* § 512.

2. After his convictions and a presentence investigation, the Court sentenced Mr. Scott to an unsuspended 26 years of incarceration, followed by work release, and then probation. Mr. Scott then filed a direct appeal, and the Delaware Supreme Court affirmed his conviction.

3. Mr. Scott next filed a *pro se* motion for postconviction relief pursuant to Superior Court Criminal Rule 61 accompanied by a motion for appointment of

counsel. The Court granted the motion, and postconviction counsel filed an amended motion. The Court then referred the matter to a Superior Court commissioner for findings of fact and recommendations pursuant to 10 *Del. C.* § 512(b), and Superior Court Criminal Rule 62.

4. Mr. Scott contends that his trial counsel performed ineffectively, and that if not for that ineffective assistance, there would have been a reasonable probability of a more favorable outcome.[1] The Commissioner considered the briefing and issued findings and recommendations in the Report attached and incorporated as Exhibit A. In that Report, she recommends denying Mr. Scott's motion because he meets neither of the two *Strickland* requirements.

5. Mr. Scott now appeals the Commissioner's findings of fact and recommendations. When considering Mr. Scott's objections to the Report, the Court must make a *de novo* determination regarding whether the Commissioner erred regarding the portions in her Report to which he objects.[2]

6. The Court has thoroughly considered Mr. Scott's objections after presiding over the trial and further reviewing the record *de novo*. The Commissioner committed no error. Namely, (1) the Commissioner did not misunderstand the applicable standard as he alleges, (2) the record demonstrates that trial counsel's representation of Mr. Scott was not deficient as contemplated by *Strickland*, and (3) there would have been no reasonable probability of a different outcome had trial counsel done what Mr. Scott now contends what was appropriate.

**NOW, THEREFORE**, after a *de novo* review of the record in this matter, and for the reasons stated in the Commissioner's Report and Recommendation dated July 7, 2023:

---

[1] *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (explaining the standard applicable to ineffective assistance of counsel claims for postconviction relief).

[2] Del. Super. Ct. Crim. R. 62(a)(5)(iv).

**IT IS HEREBY ORDERED** that the Court adopts the Commissioner's Report and Recommendation attached as Exhibit A in its entirety. Mr. Scott's motion for postconviction relief filed pursuant to Superior Court Criminal Rule 61 is therefore **DENIED**.

/s/Jeffrey J Clark
Resident Judge

JJC/klc

oc:  Prothonotary
cc:  The Honorable Andrea M. Freud
      Jason Cohee, DAG
      Christopher Koyste, Esquire
      Mr. Brett Scott
      Trial Counsel for Defendant

# Exhibit A

STATE OF DELAWARE,      :
                       :         ID No. 1706021079

v.                      :

                       :   RK17070467 01 - MURDER 2nd

BRETT SCOTT,         :   RK17070468 01 - ATT ROBBERY 1st

 SBI # 00607351        :   RK17070469 01 - PFDCF

                       :   RK17100158 01 - CONSP 2nd

        Defendant.     :

## COMMISSIONER'S REPORT AND RECOMMENDATION

### Upon Defendant's Motion for Postconviction Relief
### Pursuant to Superior Court Criminal Rule 61

Jason Cohee, Deputy Attorney General, Department of Justice, for the State of Delaware.

Christopher Koyste, Esq.,

FREUD, Commissioner
July 7, 2023

The defendant, Brett Scott ("Scott"), was found guilty following a jury trial on July 26, 2018, of one count of Murder in the Second Degree 11 *Del. C.* § 635(2), as a lesser included offense of Murder in the First Degree; one count of Attempted Robbery in the First Degree, 11 *Del. C*. § 832(c); One count of Possession of a Firearm during the Commissioner of a Felony 11 *Del. C*. § 1447 (A); and one count of Conspiracy in the Second Degree, 11 *Del. C.* § 512. A presentence investigation was ordered by the Court. On September 25, 2018, Scott was sentenced to 25-years of incarceration.

Through Counsel Scott filed a timely appeal to the Delaware Supreme Court. In the appeal, Scott, raised the following argument as noted by the Delaware Supreme Court "that at most [Scott] should have been convicted of theft, not

robbery."[3]

The Delaware Supreme Court affirmed Scott's conviction on April 29, 2019. On April 22, 2020, Scott filed a Motion for Postconviction Relief, *pro se*, in which he raised multiple grounds for relief, including ineffective assistance of counsel. He filed a concurrent Motion for Appointment of Counsel. The Court granted the Motion to Appoint Counsel on April 24, 2020. On November 6, 2020, Christopher S. Koyste, Esq., was appointed to represent Scott in his Motion for Postconviction Relief. An Initial Briefing Order was set. Appointed Counsel filed an Amended Motion for Postconviction Relief after several requests for continuance. Thereafter, the State requested and was granted additional time to file its Reply. Ultimately, after Appointed Counsel filed his reply to the State and Trial Counsel, I reviewed the briefs and determined that the State and Trial Counsel needed to supplement their responses. The parties all filed Supplemental Responses and Replies, and the matter is now finally ripe for review.

## FACTS

Following are the facts as set forth by the Delaware Supreme Court in its order:

> The evidence at trial, viewed in a light favorable to the State, showed that on July 27, 2017, Raymond Ward convinced Lisa Wagaman, an acquaintance of Dukes', to join with him to steal a bag from Dukes' car where Dukes stored drugs and cash. Ward planned for Wagaman to get Dukes to park his car in a specific location and distract Dukes while Ward stole the bag from the car. Ward also enlisted the help of Gregory Sellers and Scott for this scheme. It was not clear from testimony why Ward needed two additional men for the plan to grab the bag. Nor was it clear how much Scott knew about the initial plan, although Sellers testified that Scott was informed of "[p]retty much what he picked him up for. Like, what he was going to do."
> Later that afternoon Wagaman was with Dukes in his car, but

---

[3] Scott v. State, Del. Supr. No. 523, 2018 at 2.

decided she no longer wanted to participate and got out of the car. Scott and Ward approached the car. Scott first asked Wagaman for a cigarette, and then apparently asked Dukes for one through the passenger window. The rest of the conversation is unknown. Sellers testified that Scott reached towards his waistband, and then Dukes shot at Scott and Scott shot back. Sellers and Ward then took Scott to the hospital, where police apprehended Scott. Dukes died from his wounds, and Scott was seriously injured.

Sellers pled guilty to attempted first degree robbery, possession of a firearm during commission of a felony, and conspiracy second degree. Wagaman pled guilty to second degree murder and conspiracy second degree. Ward went to trial and was acquitted.

At Scott's trial, Scott moved for judgment of acquittal, claiming that the plan all along was to commit a theft, not a robbery, and thus Scott could not be convicted of attempted robbery first degree. The Superior Court ruled that the State introduced sufficient evidence to support an attempted robbery conviction:

> Mr. Scott rode to Pine Grove Apartments, with a weapon at one point that was in his waistband, after an occupant of his car coordinated the stealing of drugs and money from the alleged victim at that location. In the light most favorable to the State, the accumulation of those individuals, and their coordinated movement towards confronting the alleged victim constitutes a substantial step in furtherance of theft and what was to be a robbery attempt. Upon arriving there, evidence supports that Mr. Ward and Mr. Scott together approached the vehicle. Possibly after Codefendant Wagaman has left, that words were exchanged, Mr. Scott reached for his waistband, but was shot at by Mr. Dukes before Mr. Scott was able to shoot his gun and fire.[4]

Evidence of Mr. Scott traveling to the planned theft site with a gun, his not sneaking up on a car, but rather approaching and confronting the alleged victim with Mr. Ward, exchanging words with an alleged victim without committing a snatch-and-grab, and then reaching for his waistband before the first gun was discharged, would

---

[4] *State v. Scott*, (Tr of Trial July 25, 2018 pg. 48)

support a rational trier of fact in concluding that both Mr. Scott's state of mind and conduct satisfied all elements of attempted robbery.

We must presume that Scott was aware of the plan because Sellers testified that he was told "everything" by Ward, meaning "what he picked him up for. Like, what he was going to do." While there are credibility issues with Sellers' testimony, we view it in the light most favorable to the State. Similarly, Sellers testified that Scott reached for his gun during the course of the theft —meaning Scott drew his gun to "[p]revent or overcome resistance to the taking of the property" or during the "attempt to commit theft or in immediate flight after the attempt or commission of the theft." Scott is correct that the State did not present evidence that this was planned as a robbery, as opposed to a theft, but that is not dispositive. Scott knowingly assisted in an attempted theft, while carrying a weapon, and used the weapon "in the course of committing" the theft.

While the State may have gone too far by suggesting a backup plan involving use of force without presenting any supporting evidence, Scott does not substantially dispute that a theft was attempted. The use of force, even if unplanned, as part of the course of events occurring during the attempted theft is sufficient for a reasonable jury to infer that the force was used in connection with, or while attempting to flee from, the attempted theft.

## SCOTT'S CONTENTIONS

In Scott's Amended Motion for Postconviction Relief, he raises the following ground for relief:

**Claim 1**    Mr. Scott's right to the Effective Assistance of Counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, § 7 of the Delaware Constitution was violated when Defense Counsel failed to obtain evidence crucial to undermining Mr. Sellers' credibility and to supporting the defense trial strategy by failing to adequately investigate Mr. Sellers' cell phone data.

8

## DISCUSSION

Under Delaware Law, the Court must first determine whether Scott has met the procedural requirements of the Superior Court Criminal Rule 61(i) before it may consider the merits of the postconviction relief claims.[5] Under Rule 61, postconviction claims for relief must be brought within one year of the conviction becoming final.[6] Scott's Motion was filed in a timely fashion, thus the bar of Rule 61(i)(1) does not apply to this Motion. As this is Scott's initial motion for postconviction relief, the bar of Rule 61(i)(2), which prevents consideration of any claim not previously asserted in a postconviction motion, does not apply either.

Grounds for relief not asserted in the proceedings leading to judgment of conviction are thereafter barred unless the movant demonstrates: (1) cause for relief from the procedural default; and (2) prejudice from a violation of the movant's rights.[7] The bars to relief are inapplicable to a jurisdictional challenge or to a claim that satisfies the pleading requirements of subparagraph (2)(i) or (2)(ii) of subdivision (d) of Rule 61.[8] To meet the requirements of Rule 61(d)(2), a defendant must plead with particularity that new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted[9] or that he pleads with particularity a claim that a new rule of constitutional law, made retroactive to cases on collateral review by the United States or Delaware Supreme courts, applies to the defendant's case rendering the conviction invalid.[10] Scott's Motion pleads neither requirement of Rule 61(d)(2).

---

[5] *Bailey v. State*, 588 A.2d 1121, 1127 (Del. 1991)
[6] Super. Ct. Crim. R. 61(i)(1).
[7] Super. Ct. Crim. R. 61(i)(3).
[8] Super. Ct. Crim. R. 61(i)(5).
[9] Super. Ct. Crim. R. 61(d)(2)(i).
[10] Super. Ct. Crim. R. 61(d)(2)(ii).

Scott's ground for relief is premised on ineffective assistance of counsel. Therefore, Scott has alleged sufficient cause for not having asserted this ground for relief at trial and on direct appeal. Scott's ineffective assistance of counsel's claim is not subject to the procedural default rule in part because the Delaware Supreme Court will not generally hear such claims for the first time on direct appeal. For this reason, many defendants, including Scott, allege ineffective assistance of counsel in order to overcome the procedural default. "However, this path creates confusion if the defendant does not understand that the test for ineffective assistance of counsel and the test for cause and prejudice are distinct, albeit similar, standards."[11] The United States Supreme Court has held that:

> [i]f the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that the responsibility for the default be imputed to the State, which may not 'conduc[t] trials at which persons who face incarceration must defend themselves without adequate legal assistance;' [i]neffective assistance of counsel then is cause for a procedural default.[12]

A movant who interprets the final sentence of the quoted passage to mean that he can simply assert ineffectiveness and thereby meet the cause requirement will miss the mark. Rather, to succeed on a claim of ineffective assistance of counsel, a movant must engage in the two-part analysis enunciated in *Strickland v. Washington*[13] and adopted by the Delaware Supreme Court in *Albury v. State*.[14]

The *Strickland* test requires the movant to show that counsel's errors were so grievous that his performance fell below an objective standard of reasonableness.[15] Second, under *Strickland*, the movant must show there is a reasonable degree of

---

[11] *State v. Gattis*, 1995 WL 790961 (Del. Super.)
[12] *Murray v. Carrier*, 477 U.S. 478, 488 (1986).
[13] 466 U.S. 668 (1984).
[14] 551 A.2d 53, 58 (Del. 1988).
[15] *Strickland*, at 687. See *Dawson v. State*, 673 A.2d 1186, 1190 (Del. 1996)

10

probability that, but for counsel's unprofessional effort, the outcome of the proceedings would have been different; that is, actual prejudice.[16] In setting forth a claim of ineffective assistance of counsel, a defendant must make and substantiate concrete allegations of actual prejudice or risk summary dismissal.[17] Generally, a claim for ineffective assistance of counsel fails unless both prongs of the test have been established.[18] However, the showing of prejudice is so central to this claim that the *Strickland* court stated "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."[19] In other words, if the Court finds that there is no possibility of prejudice even if a defendant's allegations regarding counsel's representation were true, the Court may dispose of the claim on this basis alone.[20] Furthermore, Scott must rebut a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and this Court must eliminate from its consideration the "distorting effects of hindsight when viewing that representation."[21]

Moreover, there is a strong presumption that defense counsel's conduct constituted sound trial strategy.[22] In *Harrington v. Richter,*[23] the United States Supreme Court explained the high bar that must be surmounted in establishing an ineffective assistance of counsel claim. In *Harrington*, the United States Supreme Court explained that representation is constitutionally ineffective only if it so undermined the proper functioning of the adversarial process that the defendant was

---

[16] *Outten v. State*, 720 A.2d 547, 557 (Del. 1998), citing *Boughner v. State*, 1995 WL 466465 at *1 (Del. Supr.).

[17] *Strickland*, at 687.

[18] *Id*, at 697.

[19] *Id*.

[20] *State v. Gattis*, 1995 WL 790961 (Del. Super.).

[21] *Supra*, at 689; *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).

[22] *Id.*, at 668, 689.

[23] *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)

denied a fair trial.[24] The challenger's burden on an ineffective assistance of counsel claim is to show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. It is not enough to show that the errors had some conceivable effort on the outcome of the proceeding. Counsel's errors must be so serious as to deprive the defendant of a fair trial.[25]

Counsel's representation must be judged by the most deferential of standards. The United States Supreme Court cautioned that reviewing courts must be mindful of the fact that unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with his client, with opposing counsel, and with the judge. In light of this strong precedent, I have reviewed the file, considered the Trial Counsel's affidavits, and the arguments of counsel and I conclude that Scott has failed to meet the burden imposed by *Strickland*. Trial Counsel denies Scott's allegation. I find Trial Counsel's affidavit more compelling than Scott's allegation. I find that Trial Counsel represented Scott effectively.

Scott makes several arguments for why he believes his Trial Counsel was ineffective, all of which, as noted Trial Counsel, adamantly denies. Scott's claim is that the photograph of a black presumably[26] 9mm handgun, with a wood handle found on Sellers' cell phone, in a photo sent to him six months prior to the murder, was the same weapon used by Scott when he shot the victim. Scott claims that had Trial Counsel investigated this further he could have injected doubt into the jury's mind and discredited Sellers. I am not at all convinced that Scott's argument is valid. Even if Trial Counsel investigated the photo and was able to lead the jury to believe

---

[24] *Id*, at 791.
[25] *Id*.
[26] The State presented an expert who testified that he believed the gin in the photo was a 9mm, the same caliber as the bullets found at the scene.

12

that the gun used to shoot the victim was the same gun pictured on Sellers' phone, and therefore presumably Sellers' gun, I do not see how that would help Scott in any meaningful way. As Trial Counsel stated it had the potential of seriously jeopardizing the defense strategy, that Scott knew nothing about a robbery and only shot in self-defense after the victim shot him. If the gun was Sellers, it begs the question: how and why was Scott in possession of it? As noted by Trial Counsel, Sellers clearly could not have given the gun to Scott after Scott was shot by the victim. Therefore, Sellers or someone else would have had to have given the gun to Scott before he went to the car where the victim was. I can hardly conceive of any reason for someone giving the weapon to Scott, under the facts of this case, for innocent reasons. Consequently, Trial Counsel's informed and rationally strategic choice not to highlight the gun photo or do further investigation was certainly well informed and not in any conceivable way of ineffective assistance of counsel. I refer to Trial Counsel's two affidavits where he clearly lays out his strategy and the reasons for it.

Another argument Scott advances is that because his co-defendant was advancing a similar argument that Scott now claims his Trial Counsel should have made, i.e., the gun was Sellers, that this fact shows Scott's Trial Counsel was therefore ineffective for not doing the same thing that Ward did. There are several obvious flaws with Scott's reasons. First of all, there was absolutely no evidence at all that Ward possessed a gun during the incident. It was clear that Ward did not shoot the victim. Unlike in Scott's case where there was no question that Scott did, in fact, have the gun that killed the victim and that he used it to shoot the victim. The only question in Scott's case was whether or not he was aware of a planned crime; not whether he shot the victim. As noted above in Scott's case, trying to link the gun used in the murder to Sellers was fraught with danger for Scott since there was no question that he had the gun and shot the victim. Scott's case is clearly distinguished

from Ward's and Scott's attempt to claim otherwise is mistaken. Additionally, Ward's trial occurred after Scott's. So, the fact that Ward was acquitted is irrelevant to the decisions Trial Counsel made.

Scott also argues that not "investigating" the gun photo further was *per se* ineffective assistance of counsel and not a strategic choice. As noted by Trial Counsel, he chose not to investigate the photo further because he indicates that any investigation would not lead to information that would conceivably benefit Scott. Scott makes much ado over the fact that Sellers identifies the gun as being black with a wooden grip and argues that an investigation would have provided strong evidence that the gun was Sellers' gun. Therefore, discredit Sellers and lead to Scott's acquittal. Not only is this argument based entirely on conjecture, but it avoids the elephant in the room; black guns with wooden grips are extremely common and it would as Trial Counsel notes, been extremely easy for the State to have proved that to the Jury had Trial Counsel attempted the strategy Scott now advances. Out of curiosity, I did a quick Google search for black handguns with wooden grips and came up with hundreds, if not thousoands, of handguns from all the major handgun manufacturers in the country in all different calibers. Had the gun in question been say, neon pink with a leopard skin grip, arguably it would have been ineffective not to investigate it further. However, to not investigate a gun, that the description literally could fit hundreds of guns readily available in Delaware, was in no way ineffective and certainly not *per se* ineffective, especially in light of the points made above concerning Trial Counsel's strategy.

Turning to the cases Scott argues are indistinguishable from his case, thus proving Trial Counsel was ineffective, I note that they are all easily distinguishable from Scott's case. In *U.S. v. Kauffman*[27] counsel did not pursue an insanity claim

---

[27] 109 F.3d 186 (3d Cir 1997)

because he was unaware that an insanity defense existed due to his lack of investigation. Clearly a valid insanity defense is one that could help a defendant. In Scott's case however, as noted, there was nothing to be gained by investigating the gun photograph further and Trial Counsel was well within his obligation to not waste time investigating something that would not have led to any information that would have been beneficial to Scott.

Likewise, in *Rolan v. Vaughn*[28]. Counsel failed to pursue a self defense claim and did not investigate that claim. Again, this type of claim could lead to beneficial evidence; unlike in Scott's case as explained previously. Similarly, *Jacobs v. Horn*[29] involved not investigating diminished capacity and mental health factors. Again, these claims could benefit a defendant, unlike Scott's case. Scott's case was not a complex case. It was clear Scott was the shooter and that he shot after being shot. The only question was did he know a crime was planned? Consequently, spending time investigating a photograph of an extremely common handgun from Seller's phone would not have yielded any postive benefit to Scott. Trial Counsel's informed decision not to investigate the photo was not as Scott claims a "cursory, uniformed judgment call." Following a complete and thorough review of the facts and law in this case, I cannot conclude that Trial Counsel was ineffective or that Scott suffered any prejudice from Trial Counsel's actions.

## CONCLUSION

After reviewing the record in this case, it is clear that Scott has failed to avoid the procedure bars of Superior Court Criminal Rule 61(i). A review of his counsel's affidavit clearly shows that counsel represented Scott in a competent fashion and was not ineffective. Additionally, Scott has failed to demonstrate any concrete prejudice. Consequently, I recommend that Scott' Motion be denied for failure to

---

[28] 445 F.3d 671 (3d Cir. 2016)
[29] 395 F.3d 92 (3d Cir. 2005)

prove ineffective assistance of counsel.

/s/ Andrea M. Freud
Commissioner

AMF/jan
oc:   Prothonotary
cc:   Jason Cohee, DAG
       Christopher Koyste, Esquire
       Patrick Collins, Esq.
       Brett Scott, JTVCC
       Resident Judge Jeffrey J Clark